[Crim. No. 5394. Third Dist. Mar. 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD ALBERT HARRISON, Defendant and Appellant.

## COUNSEL

H. Eugene Netherton, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Russell L. Moore, Jr., for Plaintiff and Respondent.

## OPINION

**PIERCE, P. J.**—Defendant was convicted by a jury of attempted first degree robbery and of first degree burglary. The offenses were held to comprise an indivisible transaction and sentence imposed only for the latter offense, first degree burglary. The judgment included the recital that defendant had been charged with and was found to have been armed with a deadly weapon at the time of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code sections 969c and 3024.

Twelve contentions are submitted on appeal.[1]

For reasons stated below, the judgment of guilt for first degree burglary must be reversed; also the finding that defendant was armed with a deadly weapon within the meaning of Penal Code sections 969c and 3024. Defendant was guilty of second degree burglary but was also guilty of attempted first degree robbery, a transaction indivisible from the burglary.

Mr. and Mrs. Hunyada operate a grocery in Grass Valley. The building in which the store is located is one-story in front and is used by the grocery. The rear portion of the building is two-story and is occupied by the Hunyada family as their home. On January 17, 1969, at approximately 6:30 to 7 p.m. the sounding of a bell activated by the opening of the grocery's front

---

[1]Nine relate to matters outside the record, are refuted by the record or are otherwise not cognizable on appeal under Penal Code section 996, absent notice [not given] under Penal Code section 995. We will comment briefly on certain of these contentions at the conclusion of this opinion.

door apprised Mrs. Hunyada and her son, Gregory, that the grocery had been entered. The two were then in the kitchen adjoining the grocery. They entered the grocery and observed a tall man standing by the front door, his head covered with pink chenille cloth in which eyeholes had been cut and an automatic pistol in his hand. Mrs. Hunyada ran back to the kitchen where her husband was. Gregory heard the gunman say: "This is a stick-up." However, when Mrs. Hunyada ran towards the kitchen, the gunman left the store and ran along the highway. Gregory started to follow but retreated when the man turned and pointed the gun at him. Mrs. Hunyada testified that the gunman wore a distinctive green turtleneck shirt and green-patterned pants. She had been acquainted with defendant for a number of years. She recognized the garments as those she had seen on defendant previously. Defendants' sister, Jeanette Pisani, testified defendant had left the green shirt and pants at her home shortly after the events described above. They had been recovered by the police and were in evidence. Gregory also described the shirt.

Defendant was arrested in Reno four and a half hours later on an apparently unrelated charge. He was then with a friend, Grant LeFevre, and a female companion. A search of LeFevre's car (in which the group were traveling) revealed a semiautomatic pistol on the passenger side where defendant had been sitting. No magazine or cartridges for the pistol were found. A Nevada County Sheriff's Department evidence tag and several .22 calibre shells were found but those shells would not have fit, and could not have been fired from, the weapon found. Defendant's possession of the gun was traced to its owner, Robert Bagley, defendant's brother-in-law. He kept it, together with a magazine and shells (separately), on the closet shelf of a bedroom. Defendant, with LeFevre, had gone to Bagley's house the afternoon before the attempted robbery. Defendant had been dressed in the green outfit upon arrival, had used the bedroom mentioned as a place to try on clothes borrowed from other relatives which he proposed to wear to Reno later, but had again been wearing the green clothes when he left the Bagleys. Bagley discovered that the gun, clip and cartridges were gone. This discovery was made the day following the crime.

Defendant testified. He admitted complicity in the crime, including an admission that it was he who stole the gun (which had no clip or cartridges). He blamed LeFevre for the actual holdup. Although, he said, both had made the mask, LeFevre had been wearing the green shirt and the green pants. He did not state that he had given the gun to LeFevre. The only corroboration of any part of his testimony came from a sister whom he produced as a witness. She testified that Bagley had told her that when the two young men left his home defendant was wearing a white shirt and LeFevre a green one.

LeFevre, testifying for the prosecution on rebuttal, also admitted that both had been involved, that he, LeFevre, was aware defendant had stolen the gun, which was empty, that both had participated in making the mask— made from a seat cover from his automobile—but he said that defendant had staged the holdup and LeFevre had waited outside in the automobile. Thereafter the girl had joined them and the three had gone to Reno. Before their departure defendant had changed his clothes and the two had partially burned the mask. It and the green shirt and pants had been left at the home of defendant's sister.

In the first count of the information defendant was charged with attempted robbery in the first degree "in that [in Nevada County on January 17, 1969] he did then and there wilfully, unlawfully and feloniously attempt to rob Bernice Hunyada of money by means of a dangerous and deadly weapon, to-wit: a pistol." In count II violation of Penal Code section 459 was charged by specifying entry of a "building, to-wit: the, Pine Tree Grocery Store, with the intent to commit a felony therein and at the time was armed with a deadly weapon, to-wit: a pistol."

### Robbery [and Thus Attempted Robbery] May Be Proved in the First Degree Without Proof That a Gun Used Was Loaded

■ The rule thus stated in the caption is expressed in *People* v. *Aranda* (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265]. The rationale of the rule is that a robbery is in the first degree by definition whether perpetrated by a person armed with a deadly *or* dangerous weapon. (Pen. Code, § 211a.) "The words . . . are used disjunctively and are not equivalents. [Citations.] Thus, it is not necessary to show that the weapon is deadly so long as it can be shown that it is dangerous. . . . The prosecution does not have to prove . . . that the gun was loaded [citations] or that it was real [citations]. Any pistol, even a short one, may be a 'dangerous' weapon within the meaning of the statute since it is capable of being used as a bludgeon. [Citation.] It is not necessary to show that defendant intended to use it." (*People* v. *Aranda, supra,* p. 532.)

The jury was correctly instructed as to the elements of first degree robbery; it was also correctly instructed on "attempt." Its verdict under the first count of the information withstands challenge.

### An Unloaded Pistol as a "Deadly Weapon" in First Degree Burglary

■ There is a distinction both in case law and statutory law between a "dangerous or deadly" weapon and a "deadly weapon." The distinction

is partly generic and partly involves the intended manner of use. Under *Aranda, supra,* as we have already shown, a person armed with an unloaded pistol is (when the other elements of the crime exist) guilty of first degree robbery even though he does not use it; and the prosecution need not prove that he intended to use it. But it seems implicit under the rule of our Supreme Court as expressed in *Aranda* which stresses the use of the disjunctive in Penal Code section 211a ("dangerous or deadly") that a defendant might not necessarily be armed with a "deadly" weapon if the pistol he carried was unloaded. That would depend upon the intent of his use. If, under the facts, the jury reasonably could find that the defendant intended to use an unloaded pistol—should the circumstances make it necessary—as a bludgeon, then the unloaded pistol is "deadly;" per contra if that intent cannot reasonably be found. (Of course, *actual* use is not a condition to a finding that a weapon is "deadly".)

■, The court in the case before this court instructed the jury that defendant to be guilty of first degree burglary must have been proved guilty either of (1) having entered an inhabited dwelling in the nighttime or (2) having been armed with a "deadly" weapon. That is a correct definition of the crime. (Pen. Code, § 460, subd. 1.) But defendant had not been charged with (1) and the court did not instruct the jury what it must find to determine whether the pistol used here was "deadly." Such an adequate instruction would have been the newly formulated CALJIC, 202-C (3d ed.) which provides: "A deadly weapon means any weapon, instrument or object that is capable of being used to inflict death or great bodily injury and it is shown that the possessor intended to use it as a weapon should the circumstances require. It is not necessary that such weapon be in fact used or visible." The Attorney General argues that defendant had not requested such distinguishing instructions. This is an instruction on a general principle of law covered by the evidence. No request is required. (*People* v. *Castillo* (1969) 70 Cal.2d 264, at p. 271, fn. 5 [74 Cal.Rptr. 385, 449 P.2d 449].)

### DETERMINATION THAT DEFENDANT WAS ARMED WITH A "DEADLY WEAPON"

■ The court's judgment included a recital that defendant was found to have been armed with a "deadly" weapon "within the meaning of Penal Code sections 969c and 3024."

In *People* v. *Brewster* (1969) 276 Cal.App.2d 750 [81 Cal.Rptr. 237], hear. den., this court reviewed (at p. 752 et seq.) *People* v. *Floyd* (1969)

71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], which held inter alia that Penal Code sections 3024 and 12022 are inapplicable in those cases where the fact that a defendant was armed forms the basis for his conviction of the principal offense, e.g., commission of robbery while armed with a gun, resulting in conviction of first degree robbery rather than second degree where not so armed. Under the ruling in *Floyd* a judgment containing a recital such as that quoted above is to be modified to show that sections 3024 and 12022 (Pen. Code) are not applicable, and, where supported by the record, the recital that such defendant was armed within the meaning of section 1203 (Pen. Code) may be substituted. Entirely different standards in regard to the nature of the weapon and its use are utilized for the determination under section 1203 as compared to the same determination for purposes of sections 3024 and 12022. In addition, the latter determinations are required to be made by a properly instructed jury, upon a specific allegation as to each count, and to be set forth in a special verdict as to each count. (Pen. Code, §§ 969c, 1158a, 3024, subd. (f); see also CALJIC No. 116 et seq.) The determination pursuant to section 1203 is a matter for the court's consideration, subsequent to completion by the jury of its functions. (*People* v. *Brewster, supra,* at p. 753 of 276 Cal.App.2d.)

The record before this court does not contain the proceedings on arraignment. We cannot tell whether or not the trial court considered defendant's eligibility for probation or whether, in doing so, he met the mandate of *Floyd.* As has been shown, this case must be remanded. When it is, the trial court can make the judgments necessitated by the holding in *Floyd*—assuming it has not already done so.

## OTHER CONTENTIONS

We have mentioned above 12 contentions (see fn. 1). They have no merit and warrant little discussion:

■ The short deliberation of the jury is urged as evidencing prejudgment of the case. That is a non sequitur. (Actually, the jury returned, after brief deliberation, for a re-reading of a portion of the instructions.) Brevity of deliberation can signify immediate unanimity of judgment rather than prejudgment. Evidence of guilt was overwhelming. (*People* v. *Adams* (1963) 213 Cal.App.2d 536, 540 [29 Cal.Rptr. 57], hear. den.) The contention that LeFevre was an accessory, and that the court should have so instructed, is incorrect. LeFevre was an accomplice (as the court correctly *did* instruct.) (Pen. Code, §§ 31, 33, 1111.) ■ Defendant,

who had lived in Nevada County all of his 20 years, contends that an unbiased jury could not be selected nor a fair trial be had in that county. Nevada County is not that small and we cannot accept the statement (outside the record) that defendant's reputation is that lurid. None of the members of the panel—all of whom were questioned on the subject—admitted to any acquaintance with defendant. We cannot assume perjury. Barred by Penal Code section 996 (via the absence of any notice under Penal Code section 995) are the contentions: (1) that defendant had inadequate representation by counsel because he was not adequately interviewed prior to the preliminary hearing. (Moreover, this is outside the record.) Our inspection of the record convinces us that representation in all aspects available to our scrutiny, and gauged to the knowledge of procedural and substantive criminal law available at the time of trial, met the tests by which we determine adequacy of representation. (*In re Branch* (1969) 70 Cal.2d 200, 210 [74 Cal.Rptr. 238, 449 P.2d 174].) (2) that defendant was denied a speedy preliminary hearing—delayed for a week because of the illness of the magistrate; (3) that a witness, admonished not to discuss her testimony at the first part of the preliminary hearing, did so.

It is contended that count II (first degree burglary) was added after the preliminary hearing. This is outside the record. Even if true, the facts showing a burglary were the same as those showing an attempted robbery. An information may be amended under those circumstances to include an offense disclosed but not appearing in the commitment order. (*People v. Chimel* (1968) 68 Cal.2d 436, 443 [67 Cal.Rptr. 421, 439 P.2d 333]; reversed on other grounds (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; Pen. Code, § 739.) Other contentions are similarly outside of, or refuted by, the record.

### POWER OF COURT TO SENTENCE FOR ATTEMPTED FIRST DEGREE ROBBERY

No judgment was entered on the verdict for attempted first degree robbery. We have shown that the judgment for first degree burglary must be reversed. It would have violated the multi-punishment proscriptions of Penal Code section 654 for the court to have sentenced defendant to punishment for both the attempted robbery and the burglary. They constituted an indivisible transaction. The court, when it did not sentence for the attempted robbery (the lesser of the two offenses) undoubtedly acted in an attempted compliance with section 654. But, in ignoring the attempted robbery conviction it did not follow the sentencing technique which the cases have prescribed to cover such situations. That technique has been to sentence for all offenses of which the defendant has been convicted staying execution of the sentences on the lesser of those until the sentence upon the greatest has been discharged whereupon execution of the sentences for

the lesser offenses are permanently stayed. (*In re Wright* (1967) 65 Cal.2d 650, 655-656, fn. 4 [56 Cal.Rptr. 110, 422 P.2d 998]; *People* v. *Frogge* (1969) 270 Cal.App.2d 106, 120-121 [75 Cal.Rptr. 726]; *People* v. *Niles* (1964) 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11], hear. den.)

■ The omission was not fatal. Penal Code section 1191 requires sentencing within 21 days following return of a verdict of guilty. But failure to pronounce judgment under the section within the time limit is not jurisdictional. A delayed judgment will not be reversed when no miscarriage of justice occurs. (*People* v. *Ford* (1966) 65 Cal.2d 41, 47 [52 Cal.Rptr. 228, 416 P.2d 132]; *People* v. *Williams* (1944) 24 Cal.2d 848, 850 [151 P.2d 244].) Defendant will suffer no miscarriage of justice here. The time he has served on the first degree burglary sentence will apply on the attempted robbery sentence. (Pen. Code, § 2900.1; *In re Levi* (1952) 39 Cal.2d 41, 47 [244 P.2d 403].) Dictum in *People* v. *Niles, supra,* implying the applicability of Penal Code section 1191 (see p. 756 of 227 Cal.App.2d) was unnecessary to the decision, unsupported by case law, and we do not deem it to represent a correct exposition of sound law.

## THE ORDER

Judgment of conviction for first degree burglary is reversed. Judgment of conviction for attempted first degree robbery may be entered and sentence may be imposed thereon, all in accordance with the views expressed herein. Such judgment shall state that Penal Code sections 3024 and 12022 are inapplicable. In the event that the court has made no finding on the eligibility of the defendant for probation—with a declaration of the nature of the weapon used—it shall do so, all in accordance with the views expressed herein.

Regan, J., and Bray, J.,\* concurred.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.