[Crim. No. 10316. Third Dist. June 27, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DON VERN JOHNSON, Defendant and Appellant.

COUNSEL

Robert D. Yates for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Karen Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—Defendant pleaded guilty to possession of cocaine for sale (Health & Saf. Code, § 11351). His appeal from the judgment (order granting probation) attacks the order denying his motion to suppress (Pen. Code, § 1538.5, subd. (m)).

In reviewing a ruling by the court on a section 1538.5 motion, all factual conflicts must be resolved in the manner most favorable to the trial court's disposition of the motion; the function of the reviewing court is to determine whether there is substantial evidence to support the trial court's findings. (*People v. James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135].)

At the suppression hearing in the trial court, defendant contended that (1) the game warden had no probable cause to institute a search of his vehicle, and (2) the consent given to the sheriff's officer to search defendant's vehicle was a "fruit" of the game warden's illegal search of the vehicle. The same contentions are repeated on appeal. (See *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33].)

On November 12, 1978, the second day of pheasant season, Lieutenant Orange, a fish and game officer, observed a vehicle traveling down a dirt road in an area posted as a pheasant club. Orange observed the vehicle stop on two occasions; the driver exited both times. On the second occasion, the driver walked through a weedy area, returned to the vehicle, bent down, and leaned over into the vehicle. Shots had been fired, but Orange could not pinpoint them as coming from the area of the vehicle. When the vehicle drew abreast of Orange, defendant was seated on the passenger side with a shotgun in his hand, his two children were seated in the middle, and his father was driving. Orange asked how the pheasant hunting was; the vehicle stopped and defendant and his father stated they had not had any luck. Orange asked to check defendant's gun. Defendant opened it; it was unloaded. Defendant's father meanwhile bent down, reached for a shotgun laying parallel to the seat, and "started to fool with it." Fearing for the safety of the vehicle's occupants, Orange asked defendant's father to step out. Orange leaned into the vehicle and checked the weapon where it lay on the floor; it was unloaded. He looked under the seat and saw a medium size, paper grocery sack. Since it is common for such sacks to be used to carry pheasants, Orange touched it; because of its texture, weight and size he believed it possibly contained an illegal pheasant; a rooster or "legal" pheasant, he believed, would have been in plain view. Orange opened the sack and saw inside a zip-lock transparent plastic bag containing a green leafy substance which he suspected to be marijuana. A green bank bag came out from under the seat when Orange pulled out the paper sack. The green bag was locked. Orange placed it on top of the seat.

Sheriff's officers were called and arrived at the scene. Sergeant Rambo was shown the grocery sack and the plastic zip-lock bag; he ordered defendant to exit the vehicle and and advised him of his constitutional rights. Defendant waived his rights and stated the marijuana was his. Defendant also consented to the search of his vehicle. Orange retrieved the green bank bag from under a sweater on the pas-

senger side of the vehicle. Rambo felt the bank bag and believed it contained paraphernalia; the bag was opened with one of defendant's keys and an ounce to an ounce and a half of white powder was found. The white powder contained cocaine.

■ Orange had authority pursuant to section 2006 of the Fish and Game Code to check the shotguns in order to determine whether they were loaded. (Cf. Pen. Code, § 12031, subd. (e).) He acted reasonably when he had the driver step out in order safely to examine the gun which was on the floor. (See *People v. Waters* (1973) 30 Cal.App.3d 354, 360 [106 Cal.Rptr. 293].) His observation of the area under the seat did not constitute a search in the constitutional sense since he was in a place where he had a right to be when the observation was made. (See *People v. Hill* (1974) 12 Cal.3d 731, 748 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People v. DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].) Furthermore Orange's observation of the driver's conduct in the field, his hearing of shots, his belief that the driver was pheasant hunting—confirmed by his response that they had no luck hunting that day, and his presence in a pheasant hunting area, gave Orange probable cause to look under the vehicle's seat to check for illegal game. (*Cleaver v. Superior Court* (1979) 24 Cal.3d 297, 308 [155 Cal.Rptr. 559, 594 P.2d 984].) Orange's knowledge that pheasants are commonly placed in paper sacks such as the one seen under the seat, his touching the sack and belief that it contained a pheasant, constituted sufficient causes, along with the authority given under section 1006 of the Fish and Game Code, to inspect the sack.[1] (See *United States v. Biswell* (1972) 406 U.S. 311, 315-317 [32 L.Ed.2d 87, 92-93, 92 S.Ct. 1593]; *People v. Di Bernardo* (1978) 79 Cal.App.3d Supp. 5, 6-7 [144 Cal.Rptr. 902]; *People v. Maxwell* (1969) 275 Cal.App.2d Supp. 1026, 1027-1029 [80 Cal.Rptr. 86].) The seizure of the marijuana was proper.

Insofar as defendant contends that the search of the green bag was a "poisonous fruit" of the search of the grocery sack, he cannot prevail for the reasons heretofore discussed. Moreover, having failed to object to the search of the green bag on any other theory, he should be precluded from having the search reviewed on other grounds. (*People v. Talley* (1967) 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564]; *People v. Gunnerson* (1977) 74 Cal.App.3d 370, 382 [141 Cal.Rptr. 488];

[1]Section 1006 states, in pertinent part: "The department may inspect...all receptacles, except the clothing actually worn by a person at the time of inspection, where birds...may be stored, placed, or held for sale or storage...."

*People* v. *McDowell* (1972) 27 Cal.App.3d 864, 878-879 [104 Cal.Rptr. 181].) The rationale for precluding the raising of new theories or "grounds" on appeal is to give each of the parties an adequate opportunity to litigate the matter below. (*People* v. *Manning* (1973) 33 Cal. App.3d 586, 601 [109 Cal.Rptr. 531].) However, the scope of the consent is now raised on rehearing at the invitation of the court. We briefly address that issue.

■ Consent to search the vehicle was given after the marijuana was found. The consent implicitly contemplated a search for narcotics. When consent was given, the presence of the green bag in the truck was known to defendant and the officers. The latter reasonably believed the green bag contained narcotics paraphernalia. Under these circumstances, the trial court's express finding that the consent to search "included the green bag" finds substantial evidentiary support. (*People* v. *Harwood* (1977) 74 Cal.App.3d 460, 467 [141 Cal.Rptr. 519].) Defendant's silence when asked for the key to the green bag does not compel the inference that consent was withdrawn. (*People* v. *Gurtenstein* (1977) 69 Cal.App.3d 441, 449 [138 Cal.Rptr. 161].)[2]

The judgment is affirmed.

Evans, J., concurred.

**BLEASE, J.**—I concur in the result and in the opinion except for the court's reliance on Fish and Game Code section 1006.

---

[2]Counsel did not rely in the trial court on the rule first expounded in *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]. The suppression hearing was held in March 1979 before the *Chadwick* rule had been judicially extended to automobile searches. (See *Arkansas* v. *Sanders* (1979) 442 U.S. 753, 754-756 [61 L.Ed.2d 235, 238-239, 99 S.Ct. 2586], maj. opn.; p. 766 [61 L.Ed.2d p. 246], conc. opn. of Burger, C. J.; p. 768 [61 L.Ed.2d p. 248], dis. opn. of Blackmun, J.) While it was unsuccessfully urged in the trial court that the consent was involuntary, it was never contended that the consent did not encompass the green bag. The *Chadwick* rule obviously will not vitiate a consent search.