[Crim. No. 36622. Second Dist., Div. Five. Jan. 7, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK PALACIO OROZCO, Defendant and Appellant.

---

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TORRES, J.*—**Frank Palacio Orozco appeals his conviction pursuant to jury verdict of burglary in the first degree (Pen. Code, § 459), robbery (Pen. Code, § 211) and grand theft (Pen. Code, § 487, subd. 3). He was sentenced to prison for a period of five years.

FACTS

*Penal Code Section 1538.5 Motion*

On October 15, 1978, at approximately 11:50 a.m., Officer Larkin and his partner, Jackie Robbins, were dispatched by police radio to a location in the City of Pomona. "An anonymous informant had phoned in and reported shots being fired out of a cream, vinyl top over a cream colored vehicle in the area of Phillips and East End, and the occupants were several Mexicans."

When they arrived at the location he observed "a car kind of cream colored with a vinyl roof which was darker than the rest of the car." Inside the car he observed occupants who appeared to be Mexican. There was no other vehicle matching the description, given in the broadcast, in the vicinity. Defendant was seated on the right front passenger seat, Rubin Madrano was seated in the driver's seat and on the rear seat left to right were Miss Orozco, Mrs. Hernandez and Mr. Estrada.

The officers parked their vehicle behind the cream colored car, alighted, and ordered the occupants out at gunpoint. In patting down defendant, Officer Larkin felt an object in his pocket which he believed to be a knife. He removed the object and discovered it to be a clip from an automatic weapon containing two live rounds.

Officers Wright and Terrio were also dispatched by police radio to the same location. They were informed by the dispatcher that there was a vehicle with the occupants drinking and that shots were being fired from within the vehicle. They arrived at the location two or three minutes after the call. When they arrived, two police units were at the location, the occupants were out of the vehicle and were in the process of being searched by Officer Larkin. Officer Wright approached the cream colored car and within a four-foot span of the passenger door he observed two expended cartridges on the ground. The cartridges were recovered.

---

*Assigned by the Chairperson of the Judicial Council.

Officer Terrio entered the vehicle and from underneath the front passenger seat recovered a Ruger .22 revolver in a leather holster. Officer Wright subsequently searched further back underneath the front passenger seat and found a .22 Sterling semiautomatic pistol without a clip. The clip in the defendant's pocket fit the Sterling pistol. The cartridges found could have been fired by either of the weapons.

Officer Terrio checked the .22 Sterling pistol serial number through the communication system. It came back registered in Pomona to an address 2111 North San Antonio. Officer Terrio had that morning been informed at briefing about a robbery the night before at 2111 North San Antonio and that a .22 semiautomatic blue steel pistol had been taken. The suspects were described as a male and female Mexican.

*Substantive Evidence*

On October 14, 1978, Mrs. Loraine Williams lived at 2111 North San Antonio in Pomona.[1] At about 10:30 p.m., a female came to the front door with a male. She requested to use the phone. As Mrs. Williams was opening the door, a man, identified by Mrs. Williams at the preliminary hearing as the defendant, hit her from the back and knocked her down. The man continued to hit her about her face and body while she was lying on the floor and told her "to shut up or he would kill her." She was thrown on her bed and covered with bed covers. The house was ransacked. She subsequently discovered her car, house keys and .22 Sterling automatic pistol missing. She phoned her son and was subsequently taken to the hospital. She received broken ribs and bruises all over her body. She was hospitalized for a week. While at the hospital she was shown photographs of male and female Mexicans. She identified a photograph of defendant.

Edward Sass, Mrs. Williams' son, responded to his mother's phone call. When he arrived at her residence he noticed her car missing from the driveway. His mother's forehead was bleeding and her face was badly bruised. He owned the car jointly with his mother. He described the car as a white 1965 two-door Plymouth, license No. NHL867. He gave the police a receipt for purchase of the Sterling pistol, serial No. A13852.

---

[1]The victim, Mrs. Williams, was deceased at the time of trial. Her death was totally unrelated to this case.

Officer Stewart testified that on October 14, 1978, at approximately 11:40 p.m., he recovered a 1965 Plymouth, license No. NHL867, registered to Loraine Williams. The car was parked across the street from 2934 Hollander, in Pomona. There were no keys in the ignition and the car was not locked.

Officer Straus testified that on October 20, 1978, he arrested the defendant outside of his residence at 2934 Hollander in Pomona pursuant to an arrest warrant.

Defendants fingerprints were compared with a latent print lifted from the inside passenger window near the upper rear corner of the 1965 Plymouth, license No. NHL867. There was expert testimony that the latent print lifted was made by the defendant. The position of defendant's print could have been consistent with the print of the passenger pushing the door to open it.

*Defense*

Defendant testified that on the evening of October 14, 1978, he was home drinking. He lives at 2934 Hollander in Pomona. He left the house about 9 p.m. to go to the liquor store to buy more beer. He rode to the store in Neno's car, a beige or brown Plymouth.

When they returned from the liquor store about 9:15 p.m., Neno parked the car across the street from his home in front of a white Plymouth. Defendant walked to his front yard, put the beer down on the lawn, and then realized he had left the cigarettes he had bought at the liquor store on the right front passenger seat. It was very dark, as the only street light was located four or five houses away. He walked back to the car to retrieve his cigarettes, but mistakenly walked to the white Plymouth instead. He realized he was in the wrong car when he looked into the car and saw somebody sitting in the front passenger seat. The door of the car was partially open, and as he leaned into the car he saw clothing in the back seat. Thinking the car was stolen, he immediately walked back to his front yard without bothering to retrieve his cigarettes from Neno's car.

Defendant testified he did not see the white Plymouth arrive, nor could he recognize the person sitting in the car. He was home when the police arrived at 11:40 p.m., to impound Mrs. Williams' Plymouth. He went to bed approximately 3 a.m. He testified he might have made a

second trip to the liquor store but was not sure because he was very high from the liquor he had consumed that evening.

Defendant further testified that the next morning he, along with some friends, drove to Mike Perez's home on East Phillips to borrow a car. While visiting with Perez, he heard shots being fired. He returned to the car and obtained the pistol from one of the occupants. He removed the clip, placed it in his pocket and placed the gun underneath the front seat as he did not want to see anyone hurt. Just as he was exiting the car to return to Perez with more beer, the police arrived.

### ISSUES

Defendant Orozco contends that: (1) The trial court erred in denying the section 1538.5 motion to suppress evidence; (2) defendant's prior conviction was constitutionally invalid and thus the trial court erred in using it for enhancement of sentence and allowing its introduction into evidence to impeach appellant; (3) The trial court erred in denying defendant's motion to suppress a photographic and courtroom identification by the victim; (4) The trial court erred in admitting the preliminary hearing testimony of the victim at the trial pursuant to Evidence Code section 1291; (5) The trial court abused its discretion by admitting the seven colored photographs of the victim into evidence; (6) The trial court erred in denying defendant's request to modify CALJIC No. 211.

### DISCUSSION

### I

Defendant Orozco contends on this appeal that the trial court erred in denying the Penal Code section 1538.5 motion to suppress because (1) the people failed to produce the officer(s) who initiated the radio dispatch, (2) the evidence was insufficient to justify the detention of defendant, (3) the circumstances did not warrant a pat-down search of defendant, and (4) since the detention and pat-down were illegal the physical evidence recovered from defendant's person and in the car was inadmissible.

When Officer Wright began to testify as to the contents of the radio broadcast at the section 1538.5 Penal Code hearing, defense counsel objected on the grounds of hearsay. He stated: "The district attorney should have the original dispatcher, the declarant of such statement in

court. Otherwise said probable cause and/or right to detain could be manufactured." The court overruled the objection. Defense counsel made the same objection when Officers Terrio and Larkin testified at the hearing and the objections were overruled.

"[I]f the detaining officer himself does not have personal knowledge of facts justifying the detention, but acts solely on the basis of information or direction given him through police channels, the prosecution must establish in court, when challenged, evidence showing that the officer who originally furnished the information...was in possession of facts amounting to circumstances short of probable cause which would have justified him to personally make the detention." (*People* v. *Collin* (1973) 35 Cal.App.3d 416, 420 [110 Cal.Rptr. 869].)

The court should have insisted that the people produce the dispatcher or other competent evidence if the dispatcher was not available. However, a review of the record leads us to conclude that a reversal is not required.

"'[W]hen it comes to justifying the total police activity in a court, the people must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' [Citations.]" (*Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 666 [87 Cal.Rptr. 202, 470 P.2d 11].)

As the *Remers* case itself says, the conduct of the officers on the scene is beyond criticism. They obviously have to act on the basis of what they are told by the dispatcher or their superiors. The whole point of the *Remers* rule is to negate the possibility that the facts which validate the conduct of the officers in the field are made up inside of the police department by somebody who is trying to frame a person whom he wants investigated.

The best way of negating "do it yourself probable cause" is to have the officer who received the information from outside the police department testify, but that is not the only way. In this case the anonymous caller supposedly said that people were shooting out of this car. The people never proved that such a call was made but they did prove that there were cartridges within four to five feet of the passenger door to the car when the police looked for them. That these cartridges were found was testified to by officers who were subject to cross-examination. The presence of the cartridges certainly supports a very strong

inference that the police did not make up the information from the informant. Thus, the veracity of the dispatcher's statement that he received a call was circumstantially proved.

When Officer Larkin heard the broadcast and was directed to investigate by the dispatcher, he was under a duty to do so as were the other responding officers. He had been informed that an "anonymous informant had phoned in, reported shots being fired out of a cream, vinyl top over cream colored vehicle in area of Phillips and East End. Occupants several Mexicans."

When they arrived at the location they found everything to be as described over the broadcast. It was reasonable for them to believe that the occupants of the vehicle were in possession of a firearm(s). The occupants were in an unknown state of sobriety. When we consider the concern for the officer's own safety in this situation, we find it was reasonable for the officers to order the occupants out at gunpoint and pat them down. (*People* v. *Allen* (1975) 50 Cal.App.3d 896, 901-902 [123 Cal.Rptr. 80]; *People* v. *Waters* (1973) 30 Cal.App.3d 354, 361 [106 Cal.Rptr. 293].) Once Officer Larkin felt a hard object which he thought was a knife, he was justified in removing the object from defendant's pocket. (*In re Donald L.* (1978) 81 Cal.App.3d 770, 774-775 [146 Cal.Rptr. 720].) Discovering the object removed from defendant's pocket to be a clip (with two live rounds) to a weapon and the expended cartridges on the ground, a search of the interior of the car for weapons was lawful. The evidence recovered from the defendant's person and the car were properly admitted in evidence.

Since we have found the detention and pat-down of the defendant lawful, we find no merit in defendant's argument that the fingerprint comparison testimony and the photographic and personal identification testimony are inadmissible.

## II

Defendant contends that his prior conviction for perjury suffered on September 21, 1972, is constitutionally invalid because he did not waive his privilege against self-incrimination. (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709].) This contention is without merit.

The trial court examined the records from San Bernardino County pertaining to the September 21, 1972, conviction. After extensive argument by counsel the court found that the defendant personally waived trial by jury and had a two-day court trial resulting in the conviction.

Denial of the right to counsel is the only constitutional infirmity in a prior conviction which may be attacked by a motion to strike. (*People v. Coffey* (1967) 67 Cal.2d 204, 215 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Lewis* (1977) 74 Cal.App.3d 633, 640 [141 Cal.Rptr. 614].) Furthermore, the prior was over seven years old, and defendant made no showing whatsoever that he had ever attempted to attack or set aside the judgment of conviction in a timely or appropriate manner, or that he had any excuse for failing to do so. (*In re Ronald E.* (1977) 19 Cal.3d 315, 321-323 [137 Cal.Rptr. 781, 562 P.2d 684].)

## III

■ Defendant next argues that the court erred in denying the motion to suppress the photographic and courtroom identification by the victim.

When the victim was first shown the photograph lineups[2] at the hospital, defendant's photograph was not included.[3] The victim was admonished that she should not be influenced and not conclude the group contained a picture of the person who committed the crime. She was not able to make a positive identification. A few days later she was shown a photographic lineup consisting of six males. This lineup was used previously but a photograph had been removed and defendant's inserted. She positively identified the defendant. It is unreasonable to infer that she could remember the photographs shown to her on the first occasion. The procedure employed by the police was not suggestive, therefore the people were not required to show by clear and convincing evidence that the in-court identification was independent of the procedure. (See *People* v. *Blum* (1973) 35 Cal.App.3d 515, 518-519 [110 Cal.Rptr. 833].)

■ Assuming arguendo the procedure was found to be suggestive, the record clearly demonstrates the identification was independent of

[2]Two photograph lineups of males consisting of six photos each and one photograph lineup of females.

[3]The police camera malfunctioned in the taking of defendant's photograph. His photograph was taken a few days later.

the photographic lineup. At the preliminary hearing held within a few weeks of the incident, the victim testified she remembered defendant's face, "...seeing it put a fright into [her]." The photographs and in-court identification of defendant by the victim were properly admitted.

## IV

■  Defendant next contends the trial court erred in admitting the preliminary hearing testimony of the victim at the trial pursuant to Evidence Code section 1291.

There was no error in allowing the preliminary hearing testimony of the victim to be read to the jury. The declarant was unavailable (Evid. Code, § 1291, subd. (a)) and defendant was a party in both proceedings and had the right and opportunity[4] to cross-examine the declarant (victim) with the same interest and motive (Evid. Code, § 1291, subd. (b)).

## V

■  Defendant next contends the trial court abused its discretion by admitting seven colored photographs of the victim into evidence.

The court examined the seven photographs of the victim and ruled they were admissible "particularly in view of the special allegations of great bodily injury"[5] and held "the prejudicial effect is outweighed by the probative value." Evidence Code section 352 vests the court with broad discretion as to the admission of photographs. (*People* v. *Pierce* (1979) 24 Cal.3d 199, 211 [155 Cal.Rptr. 657, 595 P.2d 91].) We have examined the photographs in question and agree with the ruling of the trial court.

## VI

■  Finally, the defendant argues that the trial court erred in denying his request to modify CALJIC No. 2.11.

---

[4]Unlike the cross-examination in *People* v. *Gibbs* (1967) 255 Cal.App.2d 739, 743 [63 Cal.Rptr. 471], a case cited by defendant, where cross-examination of the witness only occupied one page, here the examination of the victim covered almost six and one-half pages.

[5]The motion for new trial was granted as to the great bodily injury findings because the jury was not instructed as to this issue.

The defendant requested that CALJIC No. 2.11 be modified by adding a sentence at the end as follows: "This rule does not, however, diminish the burden of the prosecution to prove their case beyond a reasonable doubt."

The jury was given CALJIC No. 2.90 defining the presumption of innocence, reasonable doubt and the burden of proof in the language of Penal Code section 1096. No further instruction on the subject of reasonable doubt was necessary (Pen. Code, § 1096a). The contention lacks merit.

DISPOSITION

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied February 6, 1981.