[Civ. No. 61126. Second Dist., Div. Four. Apr. 30, 1981.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROGER EUGENE MEYER, Real Party in Interest.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Alan Baum for Real Party in Interest.

**OPINION**

**FILES, P. J.**—This mandate proceeding was brought by the People pursuant to Penal Code section 1538.5, subdivision (o) to review an order of the trial court granting defendant's motion to suppress as evidence marijuana found in plain view in defendant's vehicle on the basis that uncorroborated information provided by an unidentified and previously unproven informant did not justify the initial stop and detention of defendant's vehicle.

In the underlying action the defendant (real party in interest) is charged with possessing marijuana for purpose of sale and transporting

marijuana in violation of sections 11359 and 11360, subdivision (a) of the Health and Safety Code.

The motion to suppress was submitted upon the testimony of California Highway Patrol Officers Perkins and Balsavage received at the preliminary hearing and brief testimony of the defendant at the hearing on the motion, which did not dispute the material facts.

## FACTS

Officer Perkins testified that at about 8:30 a.m. on May 21, 1980, he was stopped in his patrol vehicle along the center divider of the San Diego Freeway when a person dressed in civilian clothing drove up in a private car and identified himself as "a captain of a fire department." In an excited manner that person told the officer that he had just been driving northbound on that freeway and had observed a blue Chevrolet pickup truck with a white camper shell, California license number 598 RHT, traveling in the same direction on that freeway in a reckless manner and that one of the occupants, apparently the driver, was "pointing a gun" at other cars. Officer Perkins wrote down the reported license number during the approximately two minute conversation with the informant, but did not obtain that person's name, address, car license number or any other identification.

Due to the exigency created by the threat of the brandishing of a gun, the officer immediately proceeded northbound on the freeway in an effort to overtake the suspected vehicle. In a short time he located the vehicle described by the informant. He called for backup and continued to follow the pickup for three to four minutes in the heavy, slow-moving traffic. The officer did not observe any erratic driving of the pickup during this time but he was able to view the occupants in the cab of the vehicle through the rear window of the vehicle's camper shell and the rear window of the cab compartment. He first saw only the driver, but then the passenger came into view as "his head just seemed to pop up from being in a down position." Officer Perkins activated his emergency lights to effect a stop. He saw the passenger appear to be hiding something by leaning forward with his shoulder and pushing something underneath the seat before the vehicle stopped on the shoulder of the freeway.

Waiting for his requested backup to arrive, Officer Perkins instructed the occupants to remain inside with their hands on the windshield.

When the passenger started to get out, the officer approached the pickup with gun drawn and ordered him to get back inside. At this time Officer Balsavage arrived as backup and the two officers, with guns drawn, removed defendant and the passenger from the pickup. They conducted a pat-down search, finding no weapon. Officer Perkins conducted a cursory search of the driver's compartment for a weapon, but found none. Instead he found two open beer containers beneath the seat. He also smelled the odor of alcohol on the defendant's breath. On this basis he administered a field sobriety test. During the test Officer Balsavage stood to the rear of the right side of the pickup to observe the passenger who had returned to the front seat. Toward the end of the test, which lasted five minutes or less, Officer Balsavage looked into the camper shell through its side window, which was approximately two feet long and one foot high, and observed in plain view what appeared to him to be marijuana packed in an open box. He had looked inside because Officer Perkins had told him there was a dog in the shell and he wanted to see what kind it was. He immediately approached the passenger and handcuffed him. He then directed Officer Perkins to arrest and handcuff the defendant. Officer Perkins had just concluded the test and, having determined that defendant was not under the influence, was citing him for the opened containers. The officers placed the suspects in a patrol car and returned to the camper shell. Without warrant or consent, Balsavage opened the hatch-back door to the shell, releasing the odor of marijuana, which confirmed his original identification. He then seized the marijuana.

The trial court granted the motion to suppress on the grounds that the uncorroborated information supplied by the unidentified and previously unproven informant was insufficiently reliable to justify the initial stop and detention to investigate and that the immediate search of the passenger compartment of the vehicle after the occupants had been removed was unlawful. The police conduct following discovery of the open beer containers was found to have been lawful.

DISCUSSION

A. *The stop and detention was justified.*

We consider first the quality of the report of the unnamed "captain of a fire department" which started the investigation. That individual, in an automobile, stopped alongside a highway patrolman who was in a parked vehicle, and reported having seen a specifically de-

scribed vehicle with a driver brandishing a weapon. In making this approach the "captain" exposed himself to identification. The highway patrolman might well have asked for personal identification, or at least might have noted the license plate of the informant so as to be able to find him if he was needed as a witness. The informant was acting voluntarily and openly and with no apparent reason to speak falsely.

In *People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333], the court reviewed a number of "citizen informant" cases and summarized the law as follows: "It may therefore be stated as a general proposition that private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable. This does not, of course, dispense with the requirement that the informant—whether citizen or otherwise—furnish underlying facts sufficiently detailed to cause a reasonable person to believe that a crime had been committed and the named suspect was the perpetrator; and the rule also presupposes that the police be aware of the identity of the person providing the information and of his status as a true citizen informant. (*People* v. *Abbott* (1970) 3 Cal.App.3d 966, 970-971 [84 Cal.Rptr. 40].) In short, probable cause will not be provided by conclusionary information or anonymous informants, but neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities."

It should be noted that the inference of credibility arises because the informant acts openly, without any apparent ulterior motive, and voluntarily identifies himself. The fact that the officer in this case failed to ask the informant for a name and address, and even neglected to record a license plate number should have little bearing on the court's assessment of the informant's credibility. When the informant approached the officer, he had no way of knowing that the officer would elect to begin the pursuit without waiting to record the identity of the informant. The officer's lapse in this respect is doubtless attributable to the fact that he was a highway patrolman, trained and motivated to prevent accidents on the highway, rather than a policeman who would think in terms of establishing probable cause.

Two other principles must be considered. One is that the strength of the information an officer should have to detain for questioning is much less than it would be for an arrest. (See *People* v. *Stephenson* (1969)

268 Cal.App.2d 908 [74 Cal.Rptr. 504]; *People v. Waters* (1973) 30 Cal.App.3d 354 [106 Cal.Rptr. 293].) The other is that the exigency of the situation may justify action on information of less than ideal quality. (*People v. Sandoval* (1966) 65 Cal.2d 303, 310 [54 Cal.Rptr. 123, 419 P.2d 187].)

Officer Perkins reasonably concluded that a vehicle driven recklessly on the freeway by a man pointing a gun at other cars was the kind of hazard which required him to proceed immediately to find the car and question its occupants.

We conclude that under all of these circumstances it was reasonable and lawful for Officer Perkins to seek out the reported vehicle and detain the occupants for investigation.

The vehicle which Officer Perkins stopped met the description and carried the license plate which had been reported. Having in mind the report that the driver had been pointing a gun as he drove, and recalling the fate of other highway patrolmen who have approached gun-carrying vehicles, Officer Perkins was justified in asking all of the occupants to step out of the car for a pat-down. (See *People v. Waters, supra*, 30 Cal.App.3d 354 at p. 360; *People v. Orozco* (1981) 114 Cal.App.3d 435, 445 [170 Cal.Rptr. 604].)

■ After the patdown disclosed no gun, the reasonable next step was to inspect the driver's cab, and particularly to look under the seat (having in mind that the passenger had leaned forward as though to push something under the seat after Officer Perkins had activated his light). (See *People v. Minjares* (1979) 24 Cal.3d 410, 423 [153 Cal.Rptr. 224, 591 P.2d 514]; *People v. Odom* (1980) 108 Cal.App.3d 100, 107 [166 Cal.Rptr. 283].)

When two open containers of beer were found under the seat and the officers had noticed that defendant had an alcoholic breath, it was not unreasonable to continue the detention long enough for a field sobriety test, which lasted "five minutes or less."

It was during the sobriety test that Officer Balsavage looked through an open window in the camper shell and saw the package of marijuana.

The trial court expressly found that what the officers did after finding the open beer containers was reasonable and proper. The court said:

"If he extracts these two open containers, he has the right to cite the driver and the passenger for that matter and thereafter if he detects an odor of alcohol upon the driver's breath, even though it is in the morningtime, I think he has the right to subject him to the field sobriety test, as embarrassing as it might be, and to await the conclusion of those field sobriety tests before he determines whether an arrest is going to be made or a mere citation.... [¶] I have seen the photograph of the pickup and it is a small car, it's about as I visualized it when I read the transcript. [¶] I think that he was able to see through the side window of what he said he saw. It seems to me that based upon those observations and his experience and having previously seen materials such as this, he has probable cause to believe that marijuana in brick form is inside the car."

This finding is adequately supported by the record.

B. *The plain view observation of the marijuana in the camper shell of the truck was lawful.*

■ A controlling principle of the Fourth Amendment protection against unreasonable searches is that the amendment protects an individual's "privacy upon which he justifiably relies." (*Katz* v. *United States* (1967) 389 U.S. 347, 353 [19 L.Ed. 576, 583, 88 S.Ct. 507].) "What a person knowingly exposes to the public, ... is not a subject of Fourth Amendment protection." (*Katz* v. *United States, supra,* 389 U.S. 347 at p. 351 [19 L.Ed.2d 576 at p. 582].) In *People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 408-409 [164 Cal.Rptr. 349], it was observed: "There is no search in the constitutional sense where police officers observe things in plain sight from a place they have a right to be. [Citations.] ... Defendant's car was parked in the carport, and the victim's apparel was in plain sight without opening any doors or entering the car. 'Any expectation by defendant of privacy as to objects in plain sight in the car would have been unreasonable, and no constitutionally protected right of privacy was violated when the officers looked through the window of the car.' [Citations.]"

It is not subject to dispute that the plain sight observation by Officer Balsavage was lawful. The defendant could have no reasonable expectation that the marijuana would not be observed by the public or the police when the vehicle was parked or stopped for a traffic or other violation. No reported case qualifies this reasonable expectation of privacy rule by questioning the subjective motive of the observing officer.

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of November 13, 1980, granting the motion of defendant to suppress, and to make a new order denying that motion.

Kingsley, J., and Woods, J., concurred.