[No. B177605. Second Dist., Div. Seven. May 26, 2005.]

JASON LOWRY, Petitioner and Respondent, v.
CHON GUTIERREZ, as Director, etc., et al., Respondent and Appellant.

COUNSEL

Bill Lockyer, Attorney General, Jacob A. Applesmith, Assistant Attorney General, Silvia M. Diaz and Laura Lee Gold, Deputy Attorneys General, for Respondent and Appellant.

T. Douglas Allen for Petitioner and Respondent.

OPINION

JOHNSON, J.—The Department of Motor Vehicles and its director Chon Gutierrez (collectively referred to as the DMV) appeal from an order setting aside the administrative suspension of Jason Lowry's driver's license for drunk driving. The issues are whether the contents of a call to police from an

anonymous cell phone user gave a patrol officer reasonable cause to briefly stop a motorist's vehicle for purposes of investigating the reported erratic driving and, if not, whether evidence obtained as the result of an unlawful traffic stop must be excluded at an administrative hearing to suspend the motorist's license.

In what we concede is a close call we conclude the officer had reasonable cause to stop Lowry and therefore the evidence resulting from the stop was admissible at Lowry's administrative hearing. Accordingly we do not reach the question whether the exclusionary rule applicable to criminal cases applies to DMV administrative hearings.

## FACTS AND PROCEEDINGS BELOW

The facts are not in dispute.

The Upland Police Department received a report about a reckless driver from an anonymous cell phone caller. According to the caller, the driver of the vehicle drove the wrong way on Benson Avenue and then turned left onto Baseline Road in front of oncoming traffic. The caller described the vehicle, gave its license number, and stated the driver was a male. The Upland police forwarded the report to the police department of the neighboring city of Claremont. From the license plate number the dispatcher at the Claremont Police Department determined the registered owner lived in Claremont. The dispatcher broadcast the information received from the Upland police and the vehicle owner's address to officers in the field.

Officer Hall received the dispatch. Four to five minutes later he spotted a vehicle matching the cell phone caller's description. It took Hall approximately 30 to 40 seconds to catch up to the vehicle and stop it. During this time the vehicle was traveling at a safe speed and Hall observed no traffic violations.

The driver identified himself as Jason Lowry and told Hall he was on his way home from work. During their conversation Hall smelled alcohol on Lowry's breath and clothes, saw his eyes were red and watery and noticed his speech was slow and deliberate. Lowry admitted drinking two 24-ounce beers after work.

Hall commenced a field sobriety test. After a few unsuccessful attempts to perform the test activities, Lowry gave up and said, "You got me, I can't do these tests, let's just get this over with." A preliminary check for blood-alcohol content showed Lowry at 0.10 percent.

Based on Lowry's objective symptoms of intoxication, his inability to compete the field sobriety test and his blood-alcohol level, Hall formed the opinion Lowry had been driving under the influence and arrested him.

Following Lowry's arrest the DMV suspended his driver's license and this suspension was upheld at an administrative hearing. The hearing officer determined Hall had reasonable cause to stop and detain Lowry on suspicion of drunk driving based on the report by the anonymous cell phone caller and probable cause to arrest based on the objective symptoms of intoxication Hall observed after making the stop.

Lowry filed a petition for writ of mandate in the superior court, challenging the DMV's order suspending his license. He contended the officer did not have reasonable cause to make the traffic stop and therefore any resulting evidence of drunk driving should have been excluded at the administrative hearing. The trial court agreed and issued a writ of mandate ordering the DMV to set aside its order suspending Lowry's license.

We reverse.

## DISCUSSION

We note at the outset Lowry does not contend Officer Hall lacked probable cause to arrest him for drunk driving based on the officer's observations after he pulled Lowry over. Rather, the issue is whether the traffic stop itself was lawful when it was based solely on an allegation of reckless or erratic driving reported by an anonymous caller on a cellular telephone.[1]

■ It is undisputed an officer may stop and detain a person based on a reasonable suspicion criminal activity "has taken place, is occurring, or is about to occur; and . . . the person to be detained is involved in that activity."[2]

In *Florida v. J.L.*[3] the United States Supreme Court addressed the question whether the reasonable suspicion necessary to stop and detain a person for investigation can be based on an anonymous tip. There an anonymous caller told police a young Black male wearing a plaid shirt and standing at a

---

[1] For purposes of our analysis we accept the assumption of the parties, the DMV and the trial court the caller was truly anonymous. The record does not reflect whether the Upland police identified the number of the cell phone or traced the call in some other manner.

[2] *People v. Souza* (1994) 9 Cal.4th 224, 230 [36 Cal.Rptr.2d 569, 885 P.2d 982]. See *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].

[3] *Florida v. J.L.* (2000) 529 U.S. 266 [146 L.Ed.2d 254, 120 S.Ct. 1375].

particular bus stop was carrying a gun. Three Black males were at the bus stop when officers arrived. Aside from the anonymous tip the officers had no reason to suspect any of the three men of illegal conduct. The officers did not see a firearm and none of the men made any threatening or unusual movements. An officer approached J.L., the only one wearing a plaid shirt, told him to place his hands on the bus stop and frisked him. The officer found a gun in J.L.'s pocket and he was charged with carrying a concealed weapon without a license. The Florida Supreme Court held the search violated the Fourth Amendment, and the United States Supreme Court granted certiorari.[4]

In a unanimous opinion the Supreme Court held an anonymous tip a person is carrying a gun is not sufficient to justify stopping and frisking that person. The problem with relying on anonymous tips, the court explained, is that "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated . . . 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' "[5] Thus, to justify even a brief stop and detention the tipster must provide some indication the report of criminal activity is reliable. Providing innocent and readily observable facts such as a description of the person or the person's location is insufficient.[6]

The court distinguished the case before it from *Alabama v. White.*[7] In *White* an anonymous informant called police and stated White would leave a specific location at a particular time in a brown station wagon with a broken right taillight. She would be carrying an attaché case containing an ounce of cocaine and would drive to a particular motel. Officers saw White leave the specified location at the forecasted time, get into a station wagon with a broken right taillight and drive by the most direct route toward the particular motel. White was not carrying an attaché case. The officers stopped White just before she arrived at the motel. A search of the car yielded a brown attaché case carrying marijuana.[8] The court upheld the search because it concluded the anonymous caller's ability "to predict [White's] *future behavior* . . . demonstrated inside information"—a special familiarity with White's criminal affairs.[9] The court cited its previous decision in *Adams v. Washington*[10] for the proposition that while an unverified tip may be

---

[4] *Florida v. J.L., supra,* 529 U.S. at pages 268–269.

[5] *Florida v. J.L., supra,* 529 U.S. at page 270, quoting *Alabama v. White* (1990) 496 U.S. 325, 329 [110 L.Ed.2d 301, 110 S.Ct. 2412].

[6] *Florida v. J.L., supra,* 529 U.S. at page 272.

[7] *Alabama v. White, supra,* 496 U.S. 325.

[8] *Alabama v. White, supra,* 496 U.S. at page 327.

[9] *Alabama v. White, supra,* 496 U.S. at page 332.

[10] *Adams v. Washington* (1972) 407 U.S. 143 [32 L.Ed.2d 612, 92 S.Ct. 1921].

insufficient to support an arrest or search warrant it is sufficient to justify a stop and detention if it carries "sufficient 'indicia of reliability.' "[11] While *Adams* involved a known, reliable informant, not an anonymous caller, *Adams* and *White* shared common "indicia of reliability"—verifiable predictions of what the police would find upon investigating the tip and details of the accused's criminal conduct which would not be generally known.[12]

The difference between *J.L.* and *White*, the court explained, was that in *J.L.* the tipster merely described the accused's location and appearance while in *White* the tipster not only described White and her location but accurately predicted her movements thereby showing "the tipster [had] knowledge of concealed criminal activity."[13] A showing of "reliability as to the likelihood of criminal activity," the court held, "is central in anonymous-tip cases."[14]

The court explicitly limited its holding to anonymous tips concerning gun possession. "The facts of this case," the court stated, "do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk."[15]

Since the decision in *J.L.* a number of courts have addressed the question whether a police officer may conduct an investigative stop based on an anonymous tip alleging reckless or erratic driving.[16]

There are no reported California decisions directly on point.[17]

The DMV has cited us to one California decision, *People v. Superior Court (Meyer)*[18] but in *Meyer* the tipster was not truly anonymous, as the opinion

---

[11] *Alabama v. White, supra,* 496 U.S. at page 328, citing *Adams v. Washington, supra,* 407 U.S. at page 147.

[12] *Alabama v. White, supra,* 496 U.S. at page 330.

[13] *Florida v. J.L., supra,* 529 U.S. at page 272.

[14] *Florida v. J.L., supra,* 529 U.S. at page 272.

[15] *Florida v. J.L., supra,* 529 U.S. at pages 272–273.

[16] Many of these cases are collected and discussed in York, *Search and Seizure: Law Enforcement Officers' Ability to Conduct Investigative Traffic Stops Based Upon an Anonymous Tip Alleging Dangerous Driving When the Officers Do Not Personally Observe Any Traffic Violations* (2003) 34 U. Mem. L. Rev. 173.

[17] The issue is presently before our Supreme Court in *People v. Wells* (2004) 122 Cal.App.4th 155 [18 Cal.Rptr.3d 605], review granted December 15, 2004, S128640.

[18] *People v. Superior Court (Meyer)* (1981) 118 Cal.App.3d 579 [173 Cal.Rptr. 544].

notes. The person providing the tip pulled alongside a parked highway patrol car and told the officer he had observed a blue Chevrolet pickup truck with a white camper shell driving northbound on the freeway in a reckless manner and that the driver was pointing a gun at other cars. The person making the report gave the license number of the truck and identified himself as a " 'captain of a fire department.' " The officer wrote down this information but did not obtain the tipster's name, address, vehicle license number or any other identification. A short time later the officer located a truck matching the informant's description. The officer did not observe the truck make any erratic movements nor did he observe anyone in the truck brandishing a gun. Nevertheless, the officer stopped the truck. A search of the driver and the truck failed to produce a gun but did yield a box of marijuana.[19] The Court of Appeal held the stop and detention were reasonable. The court found the informant was more than a mere anonymous tipster because the informant exposed himself to identification through his self-description as " 'a captain of a fire department' " and the license number on his vehicle. "When the informant approached the officer, he had no way of knowing that the officer would elect to begin the pursuit without waiting to record the identity of the informant."[20] *Meyer* is also distinguishable because it involved allegations of reckless driving *and* brandishing a gun. The brandishing allegation heightened the urgency of the stop.[21] It also differentiates *Meyer* from *J.L.* in which the tipster stated the man in the plaid shirt was carrying a gun, not that he was brandishing the gun or threatening anyone with it.

■ In other jurisdictions, courts holding anonymous reports of erratic driving do not justify an investigative stop have hewn closely to the analysis in *J.L.* Although the Supreme Court has frequently held the reliability of an anonymous tip should be determined from the "totality of the circumstances,"[22] for these courts the only relevant circumstance is the predictability of the suspect's future behavior. Finding none of the tips at issue predicted verifiable future conduct by the alleged reckless drivers, the courts in these cases held the stops unlawful.

In *Washington v. State*, a decision from an intermediate appellate court in Indiana, an anonymous caller advised police a "possible drunk driver" was operating a black Cadillac with a white top southbound on the Interstate. The caller also provided the Cadillac's license number. When the car passed a

---

[19] *People v. Superior Court (Meyer), supra,* 118 Cal.App.3d at pages 582–583.

[20] *People v. Superior Court (Meyer), supra,* 118 Cal.App.3d at page 584.

[21] In *Meyer* the court stated the officer "reasonably concluded that a vehicle driven recklessly on the freeway by a man pointing a gun at other cars was the kind of hazard which required him to proceed immediately to find the car and question its occupants." *People v. Superior Court (Meyer), supra,* 118 Cal.App.3d at page 585.

[22] *Alabama v. White, supra,* 496 U.S. at page 330.

state trooper the trooper verified the license number and began to follow it. The officer followed the car for two miles but observed no evidence of drunken or erratic driving. Nevertheless the officer stopped the driver based on the anonymous tip. When the driver got out of the car the officer saw marijuana in plain sight on the front seat. There was no evidence the driver was under the influence of drugs or alcohol.[23]

Reversing the defendant's conviction for various drug offenses, the appellate court stated in anonymous tip cases "federal precedent requires ability to predict future behavior, [citation] validating the informant's knowledge as 'reliable in its assertion of illegality,' [citation] in contrast to information that might be relayed to police by a prankster or a police officer acting in bad faith. . . . [¶] We accordingly hold that an anonymous telephone tip, absent any independent indicia of reliability or any officer-observed confirmation of the caller's prediction of the defendant's future behavior, is not enough to permit police to detain a citizen and subject him or her to a *Terry* stop and the attendant interruption of liberty required to accomplish it."[24]

*Commonwealth v. Lubiejewski*, decided by a Massachusetts intermediate appellate court, like the present case, involved an anonymous cell phone report of a vehicle traveling on the wrong side of the road. From the vehicle's license number the police learned the address where the vehicle was registered and an officer arrived at the location just as the suspect drove past. The officer followed the suspect for approximately 20 feet before stopping him. In this short distance the officer did not observe the suspect do anything unlawful or which might indicate he was under the influence of drugs or alcohol. Evidence obtained after the stop, however, led the officer to arrest the defendant for drunk driving.[25] The appellate court held the stop was unlawful. Although the anonymous report provided such details as the vehicle's type and license number and the area in which it was being driven, "the information supplied by the informant did not include any specific details about the defendant which were not otherwise easily obtainable by an uninformed bystander."[26] The court rejected the state's argument the stop was justified by the exigencies of the situation. "[I]n the absence of any specific information that the operator of the pickup truck was intoxicated or incapacitated in some manner, once the operator returned to the correct side of the road, the emergency had ended."[27]

---

[23] *Washington v. State* (Ind.Ct.App. 2000) 740 N.E.2d 1241, 1243.

[24] *Washington v. State, supra,* 740 N.E.2d at page 1246, citing *Alabama v. White, supra,* 496 U.S. at page 332 and *Florida v. J.L., supra,* 529 U.S. at page 272.

[25] *Com. v. Lubiejewski* (2000) 49 Mass.App.Ct. 212 [729 N.E.2d 288, 290].

[26] *Com. v. Lubiejewski, supra,* 729 N.E.2d at page 291, citing *Florida v. J.L., supra,* 529 U.S. 266, and analogous state cases.

[27] *Com. v. Lubiejewski, supra,* 729 N.E.2d at page 292.

In *State v. Stewart,* a Texas appellate court reversed the defendant's conviction for driving while intoxicated based on evidence gathered only after an officer stopped his vehicle based on an anonymous telephone call to police. The caller told the dispatcher a green Chevrolet Camaro was parked at the gas pumps of a convenience store; the driver fell down a couple of times trying to get into the car and " 'appeared to be highly intoxicated.' "[28] An officer arrived at the store just as a car matching the caller's description pulled away. The officer followed the car. The driver stopped at the red light at the intersection and made two lawful left turns. Nevertheless, the officer stopped the car and arrested the defendant for driving while intoxicated. In reversing the conviction the court held the officer's corroboration of the color, make and location of the vehicle "did not give the officer any basis for crediting the informer's accusation that the driver of the Camaro was intoxicated."[29] Citing *J.L.* and Texas decisions the court explained: "[T]he anonymous caller's tip, which was uncorroborated in its assertion of possible illegality, did not objectively support a reasonable suspicion that appellant was driving while intoxicated."[30]

In contrast to the above decision, several state supreme courts and at least one federal circuit court have upheld traffic stops based on anonymous reports of reckless or erratic driving. These courts have not required the reports to contain predictions of future dangerous conduct but instead have taken a more flexible approach to circumstances which may indicate the reliability of the information.[31] Among these cases, the opinion in *United States v. Wheat*[32] contains the most detailed analysis of the issue.

In *Wheat* an anonymous caller reported a tan and cream colored Nissan with a license plate beginning W-O-C was being driven erratically in the northbound lane of Highway 169. The caller stated the car was passing on the wrong side of the road, cutting off other cars and being driven by a " 'complete maniac.' "[33] Police dispatchers relayed this information to patrol cars in the vicinity. A few minutes later an officer spotted a car matching the caller's description and stopped it. The officer made the stop solely on the basis of the anonymous call as relayed by the dispatcher. He had not observed any traffic violations or erratic driving, nor did his investigation following the

---

[28] *State v. Stewart* (Tex.Crim.App. 2000) 22 S.W.3d 646, 648.

[29] *State v. Stewart, supra,* 22 S.W.3d at page 649.

[30] *State v. Stewart, supra,* 22 S.W.3d at page 650.

[31] These cases include *United States v. Wheat* (8th Cir. 2001) 278 F.3d 722, *State v. Walshire* (Iowa 2001) 634 N.W.2d 625, *State v. Boyea* (2000) 171 Vt. 401 [765 A.2d 862], and *State v. Rutzinski* (2001) 241 Wis.2d 729 [623 N.W.2d 516].

[32] *United States v. Wheat, supra,* 278 F.3d 722.

[33] *United States v. Wheat, supra,* 278 F.3d at page 724.

stop lead him to conclude the driver was intoxicated. A search of the car, however, produced evidence which led to the driver's and passenger's arrests and convictions for possession with intent to distribute cocaine.[34] The Eighth Circuit affirmed. For the reasons discussed below the court held stopping the vehicle was reasonable under the totality of the circumstances.

The court concluded the decision in *J.L.* was instructive but not controlling.

For one thing the tip in *Wheat* was more precise than the one in *J.L.* In *J.L.* the tipster only gave a generic description of a young Black male wearing a plaid shirt and standing at a particular bus stop. The vagueness of the tipster's description was made even more problematic by the fact the police only responded "sometime" later.[35] In *Wheat* the caller gave a precise description of the car including its make, color, location and direction of travel. The officer made the traffic stop "within minutes" of hearing the dispatch.[36]

Furthermore, the court reasoned, predictability of future conduct is not an immutable requirement for establishing the reliability of an anonymous tip. Neither *White* nor *J.L.* holds predictability is always required and to interpret those cases otherwise would contradict the Supreme Court's long-standing view reliability should be determined based on a "totality of the circumstances."[37] Moreover, tips about reckless driving do not lend themselves to a predictability-of-conduct analysis. First, it is not clear what conduct would have to be verifiably predicted to make the tip reliable. It cannot merely be a prediction the accused will pass by a certain point on a certain road at an approximate time. Such a prediction could readily be made by any person who has observed the vehicle. It does not require any inside knowledge of criminal activity.[38] Nor can it be a prediction the driver will perform some dangerous maneuver with the vehicle. If the officer personally observes the suspect driving recklessly the officer does not need the tip in order to justify a traffic stop. At the same time, requiring the officer to wait for the driver to actually cause or come close to causing an accident before he can stop the vehicle would render the officer morally if not legally culpable

---

[34] *United States v. Wheat, supra,* 278 F.3d at pages 724–725.

[35] *Florida v. J.L., supra,* 529 U.S. at page 268.

[36] *United States v. Wheat, supra,* 278 F.3d at page 732.

[37] *United States v. Wheat, supra,* 278 F.3d at page 732, and see among other cases *Alabama v. White, supra,* 496 U.S. at page 330.

[38] *United States v. Wheat, supra,* 278 F.3d at page 733. (Cf. *Florida v. J.L., supra,* 529 U.S. at p. 272.)

for the result.[39] Predictability-of-conduct is also inapposite to reckless driving cases because it was designed to test the reliability of tips about "concealed criminal activity" such as possession offenses.[40] Reckless driving is not a "concealed criminal activity" because it takes place in the open but neither is it an "innocent activity" which counts for naught in terms of establishing the observer's reliability. Rather reckless driving falls in a third category— " 'illegality open to public observation.' "[41] Observation of this type of activity may provide indicia of reliability as discussed below.

Finally, the *Wheat* court pointed to the distinction the *J.L.* court drew between a report of a person carrying a concealed weapon and a report of a person carrying a bomb. In the case of a bomb report, the Supreme Court noted in dictum, the Fourth Amendment might not demand "the [same] indicia of reliability we demand for a report of a person carrying a firearm."[42] In *Wheat* the court likened an erratic and possibly drunk driver to a person on the move carrying a bomb and concluded both pose an imminent threat to public safety not present in the case of the person with a concealed weapon.[43]

Having distinguished *J.L.* from the case before it the court in *Wheat* moved on to discuss the indicia of reliability it believed would justify an investigative stop based on an anonymous report of reckless or erratic driving.

■ As in every case involving an anonymous tip the report must contain a sufficient quantity of information to allow the responding officer to be certain she is stopping the "right" suspect. In the reckless driving context the information should include the vehicle's make and model, color, license number, location and direction of travel although slight variances would not necessarily be fatal.[44]

In addition, the quality of information in the report must be sufficient to justify an interference with the driver's liberty albeit limited and brief. Because the predictability-of-conduct test is unworkable, the information

---

[39] *United States v. Wheat, supra,* 278 F.3d at page 733.

[40] *United States v. Wheat, supra,* 278 F.3d at page 733; *Florida v. J.L., supra,* 529 U.S. at page 272.

[41] *United States v. Wheat, supra,* 278 F.3d at page 730, quoting *State v. Walshire, supra,* 634 N.W.2d at page 627.

[42] *Florida v. J.L., supra,* 529 U.S. at pages 273–274.

[43] *United States v. Wheat, supra,* 278 F.3d at page 736.

[44] *United States v. Wheat, supra,* 278 F.3d at pages 731 and 732, footnote 7.

must necessarily be based on information generally observable. Whether the information is reliable, the court held, depends on its detail.[45] Thus under *Wheat* an anonymous report the operator of a black Toyota is driving "like a maniac" would not permit an officer to stop the first black Toyota he sees after receiving the report. But a detailed description of the car, as specified above, coupled with a detailed description of what the driver is doing and a sighting of the vehicle very close in time to the report would normally be sufficient. In *Wheat* the tipster described the driver as passing on the wrong side of the road and cutting off other cars. The arresting officer spotted the car within minutes of receiving the report.[46]

Next the court addressed the main objection to allowing traffic stops based on anonymous tips: the danger the report may be a complete work of fiction created by a malicious troublemaker such as a disgruntled ex-spouse, a teenage prankster or a lying officer.[47] The court acknowledged the police will sometimes receive false reports but concluded the risk to life and property by not taking action on a report which meets the criteria described above outweighs the risk of occasionally inconveniencing an innocent motorist.[48]

■ In balancing the interest in public safety against the individual's interest in freedom from unreasonable search and seizure the court stated "there is a critical distinction between gun possession cases and potential drunk driving cases. In the possessory offense cases, law enforcement officers have two less invasive options not available to officers responding to a tip about a drunk driver. First, they may initiate a simple consensual encounter, for which no articulable suspicion is required. [Citation.] . . . . [¶] Alternatively, officers responding to a tip about a possessory violation may quietly observe the suspect for a considerable length of time, watching for other indications of incipient criminality that would give them reasonable suspicion to make an investigatory stop . . . ."[49] Neither of these choices is available to an officer receiving a report of a possible drunk driver. The officer can either stop the vehicle immediately and ascertain whether the driver is indeed operating under the influence of drugs or alcohol or he can follow and observe the vehicle and run the risk the suspect will veer into oncoming traffic, run a red light, strike a pedestrian or otherwise cause a sudden and devastating accident. Given this "stark choice" the court held "there is a substantial government interest in effecting a stop as quickly as possible. [Fn.

---

[45] *United States v. Wheat, supra,* 278 F.3d at page 734.

[46] *United States v. Wheat, supra,* 278 F.3d at pages 724, 732, 734.

[47] *United States v. Wheat, supra,* 278 F.3d at page 735; see *Florida v. J.L., supra,* 529 U.S. at page 272.

[48] *United States v. Wheat, supra,* 278 F.3d at pages 736–737.

[49] *United States v. Wheat, supra,* 278 F.3d at page 736.

omitted.]"[50] Traffic stops, the court noted, "are considerably less invasive, both physically and psychologically," than a frisk for a weapon on a public street.[51] They are analogous to the invasion occurring at a sobriety checkpoint—an invasion the United States Supreme Court has described as "slight."[52]

The court also observed there are means of reducing the risk of false reports. Law enforcement agencies should train their personnel in appropriate responses to anonymous reports of reckless driving and employ instant caller identification technology or other means to identify anonymous tipsters.[53]

After considering the factors discussed above the court in *Wheat* upheld the stop. The anonymous caller had provided an extensive description of the vehicle. The caller also related contemporaneous observations of the driver's actions and cited specific examples of moving violations. Under the totality of the circumstances the officer had a reasonable suspicion the driver was intoxicated and the stop was justified.[54]

We find *Wheat's* analysis more persuasive than the views expressed in *Washington v. State* and the other cases discussed above which hold, in essence, an officer can *never* stop a motorist to investigate an anonymous report of drunk (or reckless) driving no matter what the potential risk to innocent lives if the report is correct.

In 2002 the California Highway Patrol made 82,375 arrests for drunk driving.[55] It is no surprise then that our Supreme Court has referred to drunk driving as an "appalling problem"[56] and has found "removing drunk drivers from the roadways undeniably serves a highly important governmental interest."[57] Unfortunately law enforcement is unable to remove all drunk drivers from the roadways before they do harm. Seven hundred fifty people died on California's roads and highways in 2002 as the result of collisions

---

[50] *United States v. Wheat, supra,* 278 F.3d at pages 736–737.

[51] *United States v. Wheat, supra,* 278 F.3d at page 737.

[52] *United States v. Wheat, supra,* 278 F.3d at page 737, citing *Michigan Dept. of State Police v. Sitz* (1990) 496 U.S. 444, 451 [110 L.Ed.2d 412, 110 S.Ct. 2481]. See also *Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1341 [241 Cal.Rptr. 42, 743 P.2d 1299] (upholding constitutionality of sobriety checkpoints).

[53] *United States v. Wheat, supra,* 278 F.3d at page 736; see *Florida v. J.L., supra,* 529 U.S. at page 276 (conc. opn. of Kennedy, J.).

[54] *United States v. Wheat, supra,* 278 F.3d at page 737.

[55] <http://www.chp.ca.gov/html/per02-43.html> (as of May 26, 2005).

[56] See *Cory v. Shierloh* (1981) 29 Cal.3d 430, 435 [174 Cal.Rptr. 500, 629 P.2d 8].

[57] *Ingersoll v. Palmer, supra,* 43 Cal.3d at page 1338.

caused by drunk drivers.[58] More citizen cell phone reports such as the one in the present case may help to reduce "the carnage wrought on California highways by drunk drivers[.]"[59]

While the possibility of anonymous false reports is a legitimate concern we believe training patrol officers, 911 operators and police dispatchers to apply the kind of scrutiny applied in *Wheat* together with employment of modern caller identification methods will minimize the number of false reports the police actually act upon. This solution is not merely precative on our part. Government officials "have a unique understanding of, and responsibility for, limited public resources, including a finite number of police officers."[60] However deep their concern for a driver's Fourth Amendment rights may be, we doubt police departments or their political superiors will want to use up scarce resources chasing down false reports of reckless driving.

Applying *Wheat's* reliability factors to the present case we conclude the officer had reasonable cause to stop Lowry on suspicion of drunk driving.

The quantity test for reliability was met because the caller gave the dispatcher the driver's gender, a description of the vehicle, its license number and approximate location. This information was sufficient to allow the officer who spotted the vehicle five minutes later to make sure he was stopping the right vehicle.[61] The quality test for reliability was met because the caller gave precise descriptions of the driver's actions—wrong-way driving and making a left turn in front of oncoming traffic. The caller also named the streets on which these traffic violations occurred. This information demonstrated the caller had been an eyewitness to the accused's reckless and dangerous driving.[62]

For the reasons discussed above we hold the trial court erred in granting a writ of mandate setting aside the administrative suspension of Lowry's driver's license for drunk driving. At the same time, we want to stress the limited nature of our holding and why this case bears so little resemblance to *Florida v. J.L.*[63]

---

[58] <http://www.chp.ca.gov/html/per02-43.html> (as of May 26, 2005).

[59] *Ingersoll v. Palmer, supra,* 43 Cal.3d at page 1339.

[60] *Michigan Dept. of State Police v. Sitz, supra,* 496 U.S. at page 454.

[61] Compare *United States v. Wheat, supra,* 278 F.3d at page 731.

[62] Compare *United States v. Wheat, supra,* 278 F.3d at pages 724, 732, 734.

[63] It also bears little resemblance to the recent case of *People v. Dolly* (2005) 128 Cal.App.4th 1354 [27 Cal.Rptr. 3d 638]. In that case, Division 2 of this District upheld in a two-to-one opinion a full-scale search of a vehicle and its three occupants based on an anonymous tip to a "911" operator. The tipster reported, not erratic driving behavior, but being threatened with a gun by someone in the vehicle he described. Based on this tip, three police cruisers converged

First, we need not and do not consider in this case whether the anonymous tip about erratic driving would have justified the officer in ordering the driver to exit the vehicle, or in frisking the driver or searching the vehicle. Notably, here the officer did none of these things. Rather, this was as close to a voluntary encounter and discussion with a suspect as is possible when that person is in a moving vehicle. Initially, the officer merely stopped the car momentarily and engaged in a conversation with the driver. Only when he smelled alcohol on the driver's breath did he prolong the stop and obtain evidence confirming the driver was intoxicated and had a blood-alcohol count above the legal limit. Presumably, had the officer not smelled alcohol the conversation—and the stop—would have been brief. It would have represented only a minor inconvenience to the driver, even had the anonymous tip which prompted the stop been false or even malicious.

■ Second, we observe this case involved a person's use of a vehicle on a public roadway—which is considered a privilege not a right. We consider it reasonable to require less reliable suspicion in order to momentarily interfere with a driver's exercise of that privilege than is required to justify detaining that person when he is walking or standing someplace—including in a bus station.

Finally, we find it significant the penalty the driver suffered in this case was directly related to the subject of the anonymous tip and the avowed purpose of the ensuing stop—that momentary interference with his exercise of the privilege of driving on the public roadways. On the basis of his abuse of that privilege—that is, driving while intoxicated—he lost the driver's license which enabled him to continue using those roadways. This represents a minimal and appropriate sanction for this driver's conduct.

Thus, in this case we conclude an anonymous tip was sufficiently reliable to justify a brief interference with the privilege of driving on the public roadways for purposes of conversing with a driver suspected of abusing that privilege, during which the officer also uses his senses to detect whether that person might be intoxicated. What is being interfered with is a privilege not a right; the initial interference is minimal—a brief stop and not a "frisk" or a search; and, in this case at least, the penalty ultimately imposed is both appropriate and the minimum suggested by the driver's conduct—the suspension of a privilege to drive rather than a deprivation of the person's physical liberty.

---

on the parked vehicle. The officers ordered the driver and both passengers out of the automobile, forced them to lie on the ground and searched them and the inside of the car. The search yielded a weapon under the front seat and the driver ultimately was convicted on a gun possession charge. The *Dolly* case obviously raises very different issues than the simple traffic-related stop involved in the case before this court.

## DISPOSITION

The judgment granting a writ of mandate is reversed and the cause is remanded to the trial court with directions to enter a new judgment denying the petition and dismissing the action. Because this case presents a close legal issue on which there is conflicting authority we order each party to bear its own costs on appeal.

Perluss, P. J., and Woods, J., concurred.