Filed 11/4/15  P. v. Smith CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL CURTIS SMITH,<br><br>　　　　Defendant and Appellant. | A138815<br><br>(Sonoma County<br>Super. Ct. No. SCR-614880) |

Michael Curtis Smith was arrested for driving under the influence (DUI) (Veh. Code, § 23152, subds. (a), (b)) shortly after leaving a parking garage.  The arresting officer stopped Smith's vehicle based on a report of a "drunk driver" from an unidentified informant.  Smith's motion to suppress evidence resulting from the traffic stop was denied.  The Appellate Division of the Superior Court of Sonoma County affirmed the ruling, but certified the matter for transfer to this court on its own motion on the following questions.[1]  (1) In the context of an anonymous tip of a DUI, what level of specificity does the second prong of the test articulated in *People v. Wells* (2006) 38 Cal.4th 1078 (*Wells*) require to establish reasonable suspicion to detain?  Is it sufficient for the anonymous tipster to simply report, in conclusory terms, that he or she observed a "drunk driver"?  (2) If something more than a conclusory report of a "drunk

---

[1] "The appellate division may certify a case for transfer to the Court of Appeal on its own motion or on a party's application if it determines that transfer is necessary to secure uniformity of decision or to settle an important question of law."  (Cal. Rules of Court, rule 8.1005(a)(1).)

1

driver" is required under *Wells,* does the anonymous tipster's report of a "drunk driver" coupled with the tipster's report that the driver has the odor of alcohol satisfy the second prong of the *Wells* test? (3) Did Smith's failure to immediately pull the vehicle over after the initiation of the traffic stop constitute an objective sign of intoxication which corroborated the anonymous DUI tip?

We granted transfer as "necessary to secure uniformity of decision or to settle an important question of law" (Cal. Rules of Court, rule 8.1005(a)(1)), and directed briefing on the certified questions.[2] In this opinion, we address each of the certified questions and affirm denial of Smith's motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

On January 26, 2012, at about 6:25 p.m., Santa Rosa Police Officer James Harris was dispatched to a downtown parking garage regarding a report of a possible drunk driver. Harris was given a description of the suspect vehicle (a silver Nissan pickup truck), the vehicle's license number, and "information that was given to the dispatcher about why the [reporting] person thought [the driver] was intoxicated."[4] Harris was told that the vehicle was currently at the parking garage exit. Follow-up information from the

---

[2] Issues with Smith's retained appellate counsel have unfortunately substantially delayed resolution of this matter. The appeal was dismissed in November 2013, due to his counsel's failure to timely file an opening brief. A second motion to recall the remittitur was granted, and the appeal was reinstated in September 2014. Subsequently, the United States Supreme Court addressed the issue before us. (*Navarette v. California* (2014) 572 U.S. ___ [134 S.Ct. 1683] (*Navarette*) [affirming a nonpublished decision by this court applying *Wells*].)

[3] We rely on the electronically recorded hearing on Smith's motion to suppress. (Gov. Code, § 69957.) The hearing transcript provided to the appellate division and this court fails to comply with the requirements of the California Rules of Court, rules 2.952(g), 2.952(h), and 8.868(b). We therefore ordered that the original recording, or a copy thereof, be provided to this court. (Cal. Rules of Court, rule 8.868(c).)

[4] The information was received by Harris both orally from the dispatcher, and through a mobile data computer in his police vehicle. The recorded event chronology was marked for identification as People's Exhibit 1 and admitted into evidence "for the limited purpose of this officer's steps in the investigation of this case, and for no other reason." People's Exhibit 1 is not in the record before us.

2

dispatcher included a description of the driver, and the caller's report that he smelled an odor of alcohol. Harris also was informed that the reporting person, identified as "Joe," was "trying to help the subject with his parking ticket" and delay him from leaving.

Harris arrived at the location and saw a vehicle matching the reported description and license plate number travelling eastbound on Third Street. Harris attempted to stop the vehicle as a "matter of public safety" and activated his emergency lights. When Harris briefly activated his siren, the driver pointed over the top of the vehicle as if to indicate he was pulling over. Although there was space at the curb to pull over, the driver made a right turn, drove for another block and through another intersection, before he stopped. When Harris contacted the driver (Smith), he observed that Smith matched the description given by the dispatcher. Harris also smelled a strong odor of alcohol on Smith's breath and observed that Smith's eyes were watery and glassy. Other than Smith's initial failure to respond to the emergency lights and siren, Harris did not observe any Vehicle Code violations before he initiated the traffic stop.

Smith was charged by complaint with violations of subdivisions (a) and (b) of Vehicle Code section 23152. The complaint also alleged two prior DUI convictions. Pursuant to Penal Code section 1538.5, Smith filed a motion to suppress the blood alcohol evidence obtained following his arrest and Harris's observations. The motion was heard on May 30, 2012. Harris was the sole witness and testified to the facts set forth above. Smith's motion was denied. As note *ante*, a timely appeal was filed with the Appellate Division of the Superior Court of Sonoma County, which concurrently affirmed the order denying the suppression motion and certified the matter to this court on May 24, 2013.

## II.  DISCUSSION

" 'General standards of appellate review apply to appeals . . . transferred for decision to the Courts of Appeal.' " (*City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 382.) When reviewing a ruling on a motion to suppress under Penal Code section 1538.5, we defer to factual determinations supported by substantial evidence, "but exercise our independent judgment in determining whether, on such facts, the challenged

3

search was reasonable under the Fourth Amendment." (*People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1244–1245.) The sole issue presented here is whether Harris had sufficient basis to initiate a traffic stop of Smith's vehicle, based on all facts known to him at the time of the detention. We conclude that he did.

A.      *Wells*

In *Wells, supra,* 38 Cal.4th 1078, our Supreme Court reiterated the well-established reasonable suspicion standard for investigative stops by law enforcement officers: "[A]n officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' . . . [¶] Reasonable suspicion is a lesser standard than probable cause, and can arise from less reliable information than required for probable cause, including an anonymous tip. [Citation.] But to be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' " (*Id.* at pp. 1082–1083.)

The *Wells* court explained that citizen tips by victims or eyewitnesses generally are sufficient alone to supply reasonable suspicion, "especially if the circumstances are deemed exigent by reason of possible reckless driving or similar threats to public safety. (*Lowry v. Gutierrez* (2005) 129 Cal.App.4th 926 [phoned-in tip of erratic driving]; *People v. Rios* (1983) 140 Cal.App.3d 616 [car illegally parked and traffic hazard]; *People v. Superior Court* (*Meyer*) (1981) 118 Cal.App.3d 579 [reckless driving, driver pointing gun]." (*Wells, supra,* 38 Cal.4th at p. 1083; see *People v. Smith* (1976) 17 Cal.3d 845, 850–851 [police may reasonably rely on citizen-informant tips].) Nevertheless, special concerns arise when such a tip comes from an anonymous source.[5]

---

[5] The record indicates the information provided to Harris by the police dispatcher was not truly from an "anonymous" source. However, other than the name "Joe," information indentifying the caller was not provided to Harris prior to the traffic stop. The court below declined to consider the "collective knowledge" of the Santa Rosa

As earlier explained by the United States Supreme Court, "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated [citation], 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity' [citation]." (*Florida v. J. L.* (2000) 529 U.S. 266, 270.) To establish reasonable suspicion in an anonymous victim or eyewitness tip case, the tip must exhibit sufficient indicia of reliability, be "suitably corroborated" (*id.* at p. 270), and be "reliable in its assertion of illegality, not just in its tendency to identify a determinate person" (*id.* at p. 272). However, the *J. L.* court held open the possibility that "circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability," such as a report of a person carrying a bomb. (*Id.* at pp. 273–274.)

The California Supreme Court held that the danger exception postulated in *Florida v. J. L., supra,* 529 U.S. at pages 273–274, applies when an anonymous tipster contemporaneously reports drunken or erratic driving on a public roadway and officers are able to corroborate significant innocent details of the tip, such as detailed descriptions of the vehicle and its location. (*Wells, supra,* 38 Cal.4th at pp. 1080–1081, 1087–1088; *People v. Dolly* (2007) 40 Cal.4th 458, 464.) In *Wells*, a California Highway Patrol officer received a dispatch report of a "possibly intoxicated driver 'weaving all over the roadway' " in "a 1980's model blue van traveling north on Highway 99 at Airport Drive." (*Wells*, at p. 1081.) The officer was about three to four miles north of Airport Drive and

Police Department and treated the caller as an anonymous source. (See *People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1552–1558 [probable cause or reasonable suspicion may be established by collective information known to involved officers even if not all of that information is conveyed to the arresting or detaining officer(s)].) While we need not reach the propriety of this ruling, we note that our Supreme Court recently reaffirmed that "[a]n officer may arrest or detain a suspect 'based on information received through "official channels," ' " and that "[i]f a 911 call 'has sufficient indicia of reliability . . . a dispatcher may alert other officers by radio, who may then rely on the report, [citation], even though they cannot vouch for it.' " (*People v. Brown* (2015) 61 Cal.4th 968, at p. 983.) For purposes of our analysis here, however, we presume that the information source was not expressly identified.

saw a blue van driving north on the highway about two to three minutes after receiving the dispatch. Without observing any erratic driving or other illegal activity, the officer pulled the car over for an investigative stop. The *Wells* court held that reasonable suspicion supported the stop. (*Id.* at pp. 1081–1082.) First, circumstantial evidence supported the inference that the tipster was an eyewitness (*id.* at p. 1088), a fact that itself enhanced the reliability of the tip: "doubts regarding the tipster's reliability and sincerity are significantly reduced in the setting of a phoned-in report regarding a contemporaneous event of reckless driving presumably viewed by the caller. Instances of harassment presumably would be quite rare." (*Id.* at p. 1087.) Second, the officer confirmed detailed identifying information in the tip before pulling the vehicle over, thus further enhancing the reliability of the tip. (*Id*. at p. 1088.) Finally, the report of a reckless driver poses a "grave and immediate risk to the public." (*Id.* at p. 1087.)

*U.S. v. Wheat* (8th Cir. 2001) 278 F.3d 722 was found to be particularly persuasive by *Wells* court. (*Wells, supra,* 38 Cal.4th at pp. 1084–1088.) In *Wheat*, the tipster reported that a vehicle was "passing on the wrong side of the road, cutting off other cars, and otherwise being driven as if by a 'complete maniac.' " (*Wheat*, at p. 724.) Reasonable suspicion was found by the reviewing court to have been established by the totality of the following circumstances: "An anonymous caller provided an extensive description of a vehicle that, based on his contemporaneous eyewitness observations, he believed was being operated dangerously, and cited specific examples of moving violations. When [the police officer] caught up with the vehicle minutes later while it was stopped at an intersection, he corroborated all its innocent details, confirming that it was the one identified by the tipster. Within seconds after the vehicle resumed motion, [the officer] effected an immediate investigatory stop, *rather than allow it to proceed and potentially endanger other vehicles*." (*Id.* at p. 737, italics added.)

B.      *Navarette*

In *Navarette*, a California Highway Patrol officer stopped a pickup truck occupied by the defendants because it matched the description of a vehicle that a 911 caller had recently reported as having run her off the road. (*Navarette, supra,* 572 U.S. at pp. ___

6

[134 S.Ct. at pp. 1686–1687].)  Officers smelled marijuana as they approached the truck, searched the truck's bed, found 30 pounds of marijuana, and arrested the defendants.  (*Id.* at p. ___ [134 S.Ct. at p. 1687].)  The Supreme Court found that the caller's report to police bore adequate indicia of reliability to permit the officer to credit the caller's account, and to initiate an investigatory traffic stop.  Factors supporting reliability of the information included the caller's claim of eyewitness knowledge of the allegedly dangerous driving, the contemporaneous nature of the report, and the caller's use of the 911 emergency system to make the report.  (*Id.* at pp. ___ [134 S.Ct. at pp. 1688–1690].)

We find the same indicia of reliability present here.  The caller gave a specific description of the vehicle, including the license number, and stated that he believed the driver to be intoxicated.  The caller advised the police dispatcher that he had direct contact with the suspect, "trying to help the subject with his parking ticket," and smelled an odor of alcohol.  " '[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.' " (*Navarette, supra*, 572 U.S. at p. ___ [134 S.Ct. at p. 1689].)  The report was contemporaneous.  Harris was told that the suspect was then attempting to leave the parking garage, and that the caller was trying to delay him from leaving.  As Harris arrived at the parking garage, he observed the described vehicle driving away.  "That sort of contemporaneous report has long been treated as especially reliable.  In evidence law, we generally credit the proposition that statements about an event and made soon after perceiving that event are especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.' " (*Ibid*., citing Advisory Com., note foll. Fed. Rules Evid., rule 803(1), 28 U.S.C.A. p. 371 [describing rationale for "present sense impression" exception to hearsay rule].)  Finally, the caller utilized a police department emergency reporting system.[6]  The *Navarette* court found use of the

___

[6] Unlike *Navarette*, the record here does not expressly indicate that the caller used the "911" emergency system to call police.  The record does confirm, however, that the call was contemporaneously recorded and the recording was preserved.

911 emergency system for reporting to provide another indicator of veracity because the system has features that "allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." (*Navarette,* at p. ___ [134 S.Ct. at p. 1689].) The court observed that such calls can be recorded, providing victims with an opportunity to identify a false tipster's voice and subject him to prosecution. (*Id*. at p. 1690 [noting several California statutes making false reports a criminal offense].) "[A] reasonable officer could conclude that a false tipster would think twice before using such a system." (*Ibid*.)[7]

### C. *Reasonable Suspicion for the Traffic Stop of Smith's Vehicle*

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' [Citations.] The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' [Citation.] The standard takes into account 'the totality of the circumstances—the whole picture.' [Citation.] Although a mere ' "hunch" ' does not create reasonable suspicion [citation], the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause [citation]." (*Navarette, supra,* 572 U.S. at p. ___ [134 S.Ct. at p. 1687]; see *Wells, supra,* 38 Cal.4th at p. 1083.)

Harris received reliable information from an apparent eyewitness that an intoxicated driver was exiting a parking garage onto urban streets in the early evening hours. Harris observed the described vehicle, within a matter of moments of the report, driving away from the garage. Moreover, when Harris activated his emergency lights and siren, Smith failed to immediately pull over, despite acknowledging Harris's presence and despite opportunities to do so. While Harris did not himself observe erratic

---

[7] In a case involving an identified citizen informant, our own Supreme Court recently found the *Navarette* factors (caller's assertion of personal knowledge, contemporaneous reporting, use of the 911 emergency reporting system) to be significant indicia of reliability. (*People v. Brown*, *supra*, 61 Cal.4th at pp. 980–983.)

driving, he was not required to allow the driver to first engage in demonstrably dangerous behavior in his presence before investigating. (*Navarette, supra*, 572 U.S. at pp. ___ [134 S.Ct. at pp. 1691–1692].) Harris was not required to make the " 'stark choice' " of either stopping the vehicle immediately and ascertaining whether the driver was indeed operating under the influence of alcohol or following and observing the vehicle "and run the risk the suspect will veer into oncoming traffic, run a red light, strike a pedestrian or otherwise cause a sudden and devastating accident." (*Lowry v. Gutierrez* (2005) 129 Cal.App.4th 926, 939.)

All that is required to justify an investigatory traffic detention is that " 'on an objective basis, the stop "not be unreasonable under the circumstances." ' " (*People v. Suff* (2014) 58 Cal.4th 1013, 1054; *Wells, supra,* 38 Cal.4th at p. 1083 ["[t]he guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security' "].) The circumstances here more than justified "a brief interference with the privilege of driving on the public roadways for purposes of conversing with a driver suspected of abusing that privilege, during which the officer also uses his senses to detect whether that person might be intoxicated. What is being interfered with is a privilege not a right; the initial interference is minimal—a brief stop and not a 'frisk' or a search. . . ." (*Lowry v. Gutierrez, supra,* 129 Cal.App.4th at p. 942.)

Under the totality of the circumstances, Harris had a reasonable suspicion that the driver of the reported vehicle might be under the influence of alcohol, thereby presenting a immediate danger to pedestrians and other motorists around him. That made it reasonable under the circumstances for Harris to execute a brief traffic stop to either confirm or dispel that suspicion. The officer would have been derelict in his duties if he had not.

### III.    DISPOSITION

We affirm the trial court order denying the motion to suppress evidence.

_____

BRUINIERS, J.


WE CONCUR:


_____

JONES, P. J.


_____

SIMONS, J.


A138815

10