Filed 1/24/25  P. v. Pamela CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH PAMELA,<br><br>     Defendant and Appellant. | A168952<br><br>(Contra Costa County<br> Super. Ct. No. 04-23-00052) |

Following the denial of his motion to suppress evidence, defendant Joseph Pamela pleaded no contest to receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)) and was sentenced to probation.  Pamela now appeals the denial of his motion to suppress on the ground that the superior court relied on inadmissible hearsay evidence in violation of the *Harvey-Madden* rule,[1] and, without the challenged evidence, the prosecution failed to present sufficient admissible evidence to establish that the duration of his detention at the scene was reasonable.  We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The prosecution called two City of Antioch police officers to testify at the evidentiary hearing on the motion to suppress.

---

[1] *People v. Harvey* (1958) 156 Cal.App.2d 516 (*Harvey*), *People v. Madden* (1970) 2 Cal. 3d 1017 (*Madden*).

1

The first witness, Officer Steven Miller, testified that he was driving home after work between midnight and 1:00 a.m. on January 10, 2023, and saw a dark colored utility vehicle (UTV) or golf cart, with no headlights on, being driven down the road in the vicinity of Wilbur Avenue and Apollo Court in Antioch. Miller thought this looked suspicious, so he called an officer on duty, Officer Shawn Marques, to report what he had seen.

The second witness, Officer Marques, testified that he had indeed received a call from Miller about a golf cart-style vehicle with no lights on being driven down Wilbur Avenue, and that Marques drove to the area, which he knew to be a commercial area where "[a] lot of burglaries of businesses happen just because it's not a very well-lit area." At about 12:30 a.m., Marques saw a Kubota UTV[2] sitting on top of a trailer that was itself attached to a car. The car and trailer were stationary in the middle of the street. Neither the trailer nor the car had a license plate. Marques observed Pamela standing near the UTV, and, as Marques drove toward the car and trailer, Pamela got inside the car. Marques stopped and approached Pamela, who was in the driver's seat wearing a black latex glove on one hand and acting "nervous." Pamela said he was "just pulling over to re-strap" or "tighten up the straps" on the Kubota. But Marques testified that the wheel straps were not strapped down to the Kubota at the time Marques arrived at the scene. Marques asked for identification, which Pamela provided. There was a passenger in the car, but he would not identify himself. In response to questioning, Pamela said the car's license plate had recently been stolen, and he had just purchased the trailer and did not have a license plate for it. But

---

[2] The witness variously referred to the vehicle in question as a "UTV" or a "Kubota" or a "tractor;" it is clear from the transcript that all parties understood this to be the same vehicle.

he could not provide documentation that he owned the trailer; that, he said, was at home. Pamela said the UTV belonged to his "boss" and that he had been taking it from his boss's business nearby to his boss's house to work on it, but Pamela did not provide the name of his boss or any of the addresses. He repeated that he had pulled over because the straps securing the UTV had become "loose."

A few minutes later, other officers arrived at the scene. By this point, Marques knew Pamela's identity, but he did not know who owned the trailer or the UTV. Marques testified that he was aware that within the last week there had been a "recent uptick" of stolen tractors and golf carts in the area of "Wilbur near 160;" he was "on duty" in the area when he had learned they were stolen. Based on this knowledge and his observations of Pamela up to that point, he believed the UTV was stolen. With other officers on the scene, Marques drove down the street to see if there were areas that appeared broken into, such as gates and fences; he described the neighborhood as a very dense commercial area. Marques drove for "a half a mile, maybe more than half a mile"; he was away from the scene for about 25-30 minutes.

When Marques returned to the scene, he learned from Corporal Brogdon (who had remained at the scene) that the passenger was on probation. Marques and the other officers then searched the vehicle and found a leaf blower, as well as binoculars and walkie-talkies, which Marques described as "indicia" of burglaries. Marques observed fresh dirt and water on the Kubota, and saw that the ignition was removed, and the ignition wires were freshly stripped. He also obtained the serial number for the Kubota.[3]

---

[3] In response to a question from the court as to when Marques first saw damage to the ignition, he stated he did not recall, but "I believe I saw it when I was walking by it and looked at and I saw—I believe I saw the actual ignition, like damaged." In making its ruling on the motion, the trial court

3

Marques then contacted his colleague, Officer Duff, who had recently investigated the theft of three Kubota tractors. Duff said he thought the UTV "might be from the cemetery" and would contact someone at the cemetery; Duff subsequently reported back to Marques that the cemetery was missing a leaf blower and a Kubota with the same serial number as the one on Pamela's trailer. The officers then took Pamela and his passenger into custody for possession of stolen property. In all, Pamela had been detained for approximately two hours.

After the close of evidence, the court continued the hearing to allow the parties to file supplemental briefing and so the court could view the body worn camera evidence offered by the defense at the end of the hearing.

At the continued hearing, the court heard oral argument from the parties and stated it had watched the body camera evidence.[4] The trial court denied the motion to suppress. It found a reasonable basis for the initial detention; there was no license plate on the car and trailer, a fact immediately apparent to Marques. The court found that Marques quickly developed reasonable suspicion that the UTV had been stolen, which justified prolonging the detention, noting that Pamela "started to make some really vague and ambiguous stories about the Kubota belonging to his boss. But he couldn't say who his boss was or where he lived or what his address was or where they got it from. It was very suspicious all within the first five minutes." The court cited defendant's nervous behavior, the fact that it was

believed the body worn camera "clarified" that this happened during the early part of the detention.

[4] The trial court stated it had watched "a couple of hours of video." The appellate record, however, included only about 26 minutes of body worn camera video, on a document identified as "Defense Exhibit A" in the hearing transcript.

4

after midnight, and the passenger refusing to identify himself as providing reasonable suspicion "that stuff was stolen. That's what a reasonable person would think." The court continued, "It would take longer than six or seven minutes to fill out a citation for a not [*sic*] driving without a license plate, but you have a strong suspicion that something else is afoot and you now have to look into why their trailer is not licensed and what's up with the Kubota on the trailer with the tie-down straps still on the fender. [¶] And, you know, the Fourth Amendment prohibits unreasonable searches and seizure, but you can't say it's unreasonable for the officers to look into this highly suspicious activity. And they're trying to figure out if everything is legit. And if it is, then [Pamela] could go on his way. But they have every right to look into what looks like some unusual criminal behavior."

## DISCUSSION

### I.

"A police officer may stop and detain a person if the officer knows of 'specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity.' [Citation.] The officer must have a 'reasonable suspicion' that the person to be detained has violated the law." (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1257.)

A detention exceeds constitutional bounds when it is extended " 'beyond what is reasonably necessary under the circumstances which made its initiation permissible.' " (*People v. McGaughran* (1979) 25 Cal.3d 577, 586.) Our inquiry centers on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." (*United States v. Sharpe* (1985) 470 U.S. 675, 686 [noting that in "making this assessment" court should "take care to consider whether the police are

5

acting in a swiftly developing situation, and in such cases . . . should not indulge in unrealistic second-guessing"].) If additional cause to detain develops, additional time to investigate may be permissible. (*People v. Russell* (2000) 81 Cal.App.4th 96, 101-102; *U.S. v. Mayo* (9th Cir. 2005) 394 F.3d 1271, 1276 [permissible to extend detention where "new grounds for suspicion of criminal activity continued to unfold"]; *U.S. v. Torres-Sanchez* (9th Cir. 1996) 83 F.3d 1123, 1129 ["numerous suspicious factors . . . required [officer] to further investigate whether the occupants were participating in criminal activity"].)

The so-called *Harvey-Madden* rule is based on a line of cases—*Harvey, supra,* 156 Cal.App.2d 516, *Madden, supra,* 2 Cal. 3d 1017, and *Remers v. Superior Court* (1970) 2 Cal.3d 659. Under these cases, "[i]t is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, 'when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness." (*Remers,* at p. 666.) The purpose of the rule is to prevent "the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer." (*Id.* at pp. 666-667.) Put another way, "[t]he whole point of the [*Harvey-Madden*] rule is to negate the possibility that the facts which validate the conduct of the officers in the field are made up inside of the police department by somebody who is trying to frame a person whom he wants investigated." (*People v. Orozco* (1981) 114 Cal.App.3d 435, 444.)

6

"There is no requirement that the officer whose personal observations were relied upon for purposes of the probable cause determination actually testify to his or her observations. To the contrary, the *Harvey-Madden* rule merely precludes the prosecution from relying on hearsay information communicated to the arresting officer that is not sufficiently specific and fact based to be considered reliable." (*People v. Gomez* (2004) 117 Cal.App.4th 531, 541.) Thus, a *Harvey-Madden* objection can be satisfied by circumstantial evidence that a nontestifying officer's statement is reliable. For example, in *People v. Orozco*, *supra*, 114 Cal.App.3d at pages 444-445, the appellate court concluded the *Harvey-Madden* rule was satisfied where the dispatcher who transmitted information about a report of people shooting out of a car did not testify, but the officers who were called as witnesses testified to the presence of cartridges close to the passenger door to the car when police looked for them. The *Orozco* court reasoned that the presence of the cartridges supported a "very strong inference that the police did not make up the information" and the veracity of the dispatcher's statement about receiving a call was circumstantially proved. (*Ibid*.)

" ' "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment" ' [Citation.] In doing so we do not consider each fact in isolation. Instead, 'we must consider "the totality of the circumstances—the whole picture." ' " (*People v. Flores* (2024) 15 Cal.5th 1032, 1043.) We view the record in the light most favorable to the trial court's ruling. (*People v. Jenkin*s (2000) 22 Cal.4th 900, 969.) Even if our reasoning differs from the trial court's, "[t]he trial court's ruling must be

7

upheld if there is any basis in the record to sustain it." (*People v. Marquez* (1992) 1 Cal.4th 553, 578.)  We review a trial's court ruling on admissibility for abuse of discretion.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)

## II.

Pamela's argument on appeal is that the trial court erred in admitting "the substance of Officer Duff's investigation of prior UTV thefts through hearsay testimony without providing a sufficient basis for that investigation." He argues this evidence should have been excluded under the *Harvey-Madden* rule.  And he posits that, had this evidence been excluded, there would have been insufficient evidence at the suppression hearing to conclude that the duration of the traffic stop was "constitutionally permissible."

Pamela's argument is a narrow one.  He concedes that "Marques' initial observations of appellant driving a car and trailer without license plates provided a valid justification to conduct a traffic stop," and "further concedes that Marques' initial observations that (1) appellant was wearing a latex glove, (2) appellant's car being parked in the middle of the street without license plates, and (3) the UTV was not properly strapped on to a trailer at 12:30 in the morning . . . justif[ied] a further detention of a reasonable duration beyond the time necessary to conduct the original traffic stop mission." (He specifically concedes it was reasonable for the officers to detain him during the 30 or so minutes Marques spent driving the neighborhood looking for evidence of a break-in or theft.)  And Pamela does not challenge the search of the vehicle and trailer (apparently conducted because Pamela's passenger was on probation), which got underway upon Marques's return and which yielded further evidence of theft, including binoculars and walkie-talkies.

Pamela argues only that "[i]t was Duff's investigation of the prior UTV thefts as transmitted through Marques's testimony, without a proper foundation or in-court corroboration, *that supported further detention*." (Italics added.)

To argue his point, Pamela identifies the following excerpt from Marques's testimony, after Marques recounted that his 30-minute search of the area yielded nothing:

"[Prosecutor]:  So were you able to find any evidence or indicia that there were any recent thefts or theft of that Kubota that you were investigating?

"[Marques]:  In that area, no, where I was at.

"[Prosecutor]: So what did you do after you weren't able to find any evidence of that?

"[Marques]:  I contacted Officer Duff.

"[Prosecutor]:  And why did you contact Officer Duff?

"[Marques]:  Because he had the three Kubota tractors stolen just a few days prior."

Pamela's defense counsel objected on the grounds of "lack of foundation and relevance and hearsay."  The objection was overruled.

### III.

We conclude that the *Harvey-Madden* claim has no merit.[5]  Marques testified that when he contacted Duff he already knew about the "three

---

[5] The Attorney General makes a strong argument that Pamela's evidentiary claim is forfeited because he did not make a timely and specific objection under *Harvey-Madden*, citing *People v. Rogers* (1978) 21 Cal.3d 542, 547-548 ("bar against raising a *Harvey-Madden* issue for the first time on appeal is but an application of the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be

9

Kubota tractors stolen just a few days prior" because Marques had been on duty when the reports were taken. The trial court did not err in overruling the objection on the grounds of lack of foundation, relevance and hearsay, because Marques's knowledge of the recent prior thefts was not being offered for the truth, but to explain what Marques did next in his own investigation. It was not "Duff's investigation of the prior UTV thefts" that prolonged the detention; Marques knew about the prior UTV thefts even before he approached Pamela. It was the evidence *at the scene* that gave him reasonable suspicion to believe the UTV had been stolen.

---

urged on appeal"). Pamela's written motion to suppress made only a general reference to *Remers* and *Harvey*, noting that "although an arrest, detention or search may be based upon hearsay transmitted through 'official channels,' the person who initially received the information must testify at the hearing when challenged to do so by the defense," and asserting, without more, that "[t]he defense makes this challenge." As the Attorney General aptly observes, the prosecution met this unspecified "challenge" by calling Officer Miller to testify at the outset of the hearing about the suspicious circumstance of a UTV without headlights being driven down the street after midnight, and his call to Officer Marques. We agree with the Attorney General's observation that Miller was the "typical" *Harvey-Madden* witness whose testimony negated the possibility that the reason for the initial stop had been made up. Pamela never expressly raised *Harvey-Madden* as a basis for excluding evidence of *Duff's statements to Marques*. Pamela made evidentiary objections (hearsay, lack of foundation) in connection with the reference to Duff, as described above, but never uttered "*Harvey Madden*" and the trial court never had an opportunity to rule on the application of that rule, nor did the prosecutor, faced with an adverse ruling, have the opportunity to call Duff to testify. Nor did Pamela raise the issue either at oral argument or in the post-hearing briefs, despite the court's invitation to brief any "topic you think is material." But we need not reach the issue of whether an off-hand reference in a motion to suppress is enough to preserve the issue on appeal or whether it is forfeited, because Pamela cannot prevail on the merits.

As we have noted, Pamela does not challenge the probation search of the vehicle and trailer, which yielded binoculars and walkie-talkies, potential tools of theft. He also expressly acknowledges that "Marques observed the UTV had dirt and water on it, the ignition was removed with the wires freshly stripped." These circumstances were strong evidence the UTV was stolen and had nothing to do with Duff's prior investigation of thefts.

Indeed, at the close of evidence and before it ruled on the motion to suppress, the trial court observed that "[e]ven if I disregard information that was derived through three layers of hearsay, even if I take away the other officers' interview of the cemetery personnel, just what this officer [Marques] observed at some point during this lengthy detention was probable cause to believe that the tractor, the Kubota, was stolen because of the damage to the ignition." Marques also observed, early on in the detention Pamela's evasiveness, nervousness, and that he wore a black latex glove and gave vague answers about what he was doing and why he was moving a UTV at 12:30 a.m. Pamela lied about what he was doing with the straps; he told Marques that he was tightening them but they weren't strapped to the trailer at all. All of that, plus the water and dirt on the UTV and the damaged ignition, and the results of the search yielding binoculars and walkie-talkies supported not only reasonable suspicion to detain, but probable cause to arrest Pamela for the stolen UTV.

## DISPOSITION

The judgment is affirmed.

11

 

 

_____
Miller, J.


WE CONCUR:


_____
Stewart, P.J.


_____
Richman, J.


A168952, *People v. Pamela*